## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

HEATHER SCHROEDER, individually and on behalf of all others similarly situated,

**CLASS ACTION**

    *Plaintiff*,

**Case No.**

vs.

**JURY TRIAL DEMANDED**

PROGRESSIVE PALOVERDE INSURANCE COMPANY, an Ohio corporation,

    *Defendant*.

_____/

### CLASS ACTION COMPLAINT

Plaintiff Heather Schroeder ("Plaintiff"), by and through undersigned counsel, brings this class action, individually and on behalf of all others similarly situated, against Progressive Paloverde Insurance Company ("Progressive" or "Defendant") and alleges as follows:

### INTRODUCTION

1.      This is a class action on behalf of Plaintiff and all other similarly situated claimants in Indiana who received a payment for the loss of a totaled vehicle from Defendant, where Defendant used valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value of the loss vehicles. By using these valuation reports, Defendant systemically thumbs the scale when calculating the actual cash value ("ACV") of claimants' loss vehicles by applying so-called "Projected Sold Adjustments" that are: (a) deceptive and unexplained; (b) contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major competitor of Defendant's vendor Mitchell; and (e) on information and belief,

not applied by Defendant and Mitchell to insureds in other states like California.

2.      In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiff and all putative Class members (defined below) promises to pay for the loss, limited to the ACV of the vehicle. Attached as Exhibit A is a copy of Plaintiff's Policy ("Policy"), which is materially identical to the policy for all members of the putative Class.

3.      When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Progressive, to undervalue and underpay the claims by manipulating the data used to determine the ACV of the vehicles. Specifically, under its insurance policy terms and applicable Indiana law, Defendant has a duty to pay, and represents that it will pay, the ACV of a loss vehicle when adjusting total loss claims. Notwithstanding these obligations and representations, Defendant fails to fulfill this obligation by using a valuation process that employs improper and unreasonable adjustments to reduce the value of comparable vehicles specified in the valuation reports, which in turn reduces the valuation of the total loss vehicles and the claim payment to the insured/claimant.

4.      Specifically, Defendant, through Mitchell, systemically applies a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the ACV of Plaintiff's and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices. The adjustment is applied to each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The only purported explanation for the downward adjustment appears on the last page of the valuation reports and is a general, nondescript statement

2

claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 13.

5.      An integral part of Defendant's fraudulent scheme is a provision of the Policy which requires the parties to submit to an appraisal of the loss if there is a disagreement over the loss. The appraisal provision requires the insured and the insurer to each hire, at their own expense, an appraiser, and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less (or only marginally greater) than the cost of the appraisal, Defendant knows and intends that the insureds will forego the appraisal process and accept the artificially determined loss-payment for the total-loss claims. As designed by Defendant, the appraisal provision prevents plaintiff and the Class from effectively vindicating their rights under the Policy.

6.      To be clear, this case does not present a dispute about loss—which both Parties agree exceeds ACV, such that the vehicle is a total loss—or even ACV, which Defendant never determines. Rather, this case challenges Defendant's systematic and fraudulent scheme to mis-value insureds' vehicles that are declared a total loss in a manner which does not comport with representations made by Defendant or obligations undertaken by Defendant in its Policies, in order to illegally increase its own profits. This is an issue that cannot be resolved through an appraisal process.

7.      Moreover, the Policy is an unconscionable contract that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and neither Plaintiff nor the members of the Class had any roll in drafting its terms.

8.      Through Defendant's deceptive, fraudulent, and unfair scheme, Defendant breached

its contracts and the covenant of good faith and fair dealing and was unjustly enriched.

9.      As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiff did not receive the benefit of her bargain, and thus sustained actual damages.

10.     By this action, Plaintiff, individually and on behalf of the Class, seek damages and injunctive and declaratory relief.

## PARTIES

11.     Plaintiff Heather Schroeder, at all relevant times, was an Indiana citizen. At all relevant times, Plaintiff was contracted with Progressive for automobile insurance. On or about February 19, 2019, Plaintiff was in a car wreck and Defendant deemed her vehicle to be a total loss.

12.     Defendant Progressive Paloverde Insurance Company is an Ohio company with its principal place of business in Ohio. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensivecoverage.

## JURISDICTION AND VENUE

13.     Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff and the proposed class members are citizens of the State of Indiana. Defendant is an Ohio Corporation that has its corporate headquarters in Ohio, and, at all relevant times hereto, Defendant was engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Indiana.

14.     Plaintiff estimates that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustment that were deceptively deducted), claimed by Plaintiff and the Class are estimated in good faith to exceed $5,000,000.00.

15.     Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiff's claims occurred in this District, and Defendant transacts business in this District.

## FACTUAL ALLEGATIONS

16.     On February 19, 2019, Plaintiff was involved in a car wreck and sustained physical damage to her vehicle.

17.     Like all members of the putative Class, Plaintiff made a property damage claim to Defendant.

18.     Pursuant to the same policies and procedures, Defendant declared Plaintiff's vehicle to be a total loss and purported to offer her the ACV of her loss vehicle, as Defendant promised and represented it would under the uniform provisions of its insurance policies and Indiana law.

19.     When calculating its valuations and claims payments, Defendant systemically employs a routine "total loss settlement process." The process has no material differences relevant to this action, regardless of whether it involves first-party or third-party claimants or which Progressive entities were directly involved in the issuance of the relevant policy. This process involves obtaining a "Vehicle Valuation Report" from Mitchell and then using and relying upon the valuation provided by Mitchell to determine the benefit payment under the policy. Defendant provided a Mitchell Vehicle Valuation Report for Plaintiff on February 22, 2019. *See* Exhibit B.

20.     The Mitchell Vehicle Valuation Reports used by Defendant during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same format. These valuation reports purport to contain values for comparable vehicles recently sold or

for sale in the claimant's geographic area. The reports also contain a purported valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. The report then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. Exhibit B at p. 13.

21.     In addition, however, the valuation reports used by Defendant make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff, Projected Sold Adjustments in the amounts of -$895.00, -$942.00, -$950.00, -$946.00, -$894.00, -$945.00, -$917.00, -$947.00, and -$940.00, respectively, were applied to nine of the thirteen comparable vehicles. Exhibit B at pp. 8-12.

22.     Defendant provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support *any* Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiff's valuation report. Instead, the *only* explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 13.

23.     Defendant's Projected Sold Adjustments are deceptive. As part of a deceptive practice to lower the value of property claims, Defendant does not do what it says it will do – pay ACV. Moreover, as described above, Defendant provides no explanation or justification for the Projected Sold Adjustment, much less the specific amount applied, other than the speculation that it "reflect[s] consumer behavior." Exhibit B at p. 13.

24.     In truth, Defendant's Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to reflect the intense competition

in the context of internet pricing and comparison shopping. A negotiated price discount would be highly atypical and therefore is not proper to include in determining ACV. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement and have limited time to search out the illusory opportunity to obtain the below-market deal Defendant assumes always exists without any explanation or support.

25.     Defendant's Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining ACV, including use of comparable vehicles. Defendant begins the process of valuing loss vehicles using comparative methodology but improperly deviates from that process by thumbing the scales in favor of Progressive. Defendant documents the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and make dollar adjustments accordingly. Plaintiff does not challenge these documented adjustments. At this stage of the process, Defendant abandons the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining ACV. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

26.     The impropriety and arbitrariness of Defendant's Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

27.     On information and belief, the impropriety and arbitrariness of Defendant's Projected Sold Adjustments are further demonstrated by the fact that Progressive entities do not apply these adjustments when valuing total losses in California. There is no justification for applying these adjustments when valuing total losses in Indiana while not subjecting California claimants to the same negative adjustments.

28.     Plaintiff and each member of the class were damaged by Defendant's application of these Projected Sold Adjustments because they were not paid the ACV they would have received had Defendant applied proper methodologies and appraisal standards.

29.     Were it not for this deceptive and improper adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Defendant for ACV.  Specifically, for Plaintiff, were it not for this deceptive and improper adjustment, the payment of ACV by Defendant would have been $644.34 higher,[1] before adding the related increase in payments for applicable sales taxes.

**Defendant's Deceptive and Unfair Appraisal Process**

30.     An integral part of Defendant's fraudulent scheme is a provision of Policy which requires the parties to submit to an appraisal if there is a disagreement over the amount of loss. The appraisal provision requires the insured and the insurer to hire, at their own expense, an appraiser and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less than the cost of the appraisal, Defendant knows that the insureds will almost certainly forego the appraisal process and accept the artificially reduced ACV of the vehicle

---

[1] $644.31 is the average of the Projected Sold Adjustments applied to nine of the thirteen comparable vehicles in Plaintiff's valuation report.

for their total-loss claims. As designed, the appraisal clause prevents plaintiff and the Class from effectively vindicating their statutory and common law causes of action.

31.     To be clear, this case does not present a dispute about the amount of loss. Plaintiff does not contest Defendant's determination of the amount of loss, nor that the amount of loss exceeded the vehicle's ACV, such that the vehicle was determined by Defendant to be a total loss, i.e., totaled (uneconomical to repair). Rather, this case challenges Defendant's fraudulent scheme to illegally undervalue insureds' vehicles that are declared a total loss, in order to increase its own profits. This is an issue that cannot be resolved through an appraisal process that is part of that very scheme.

32.     Importantly, Plaintiff does not contest the *amount* of the Projected Sold Adjustment. Said another way, it is not that Defendant believes the Policy and Indiana law allow for a 6% Projected Sold Adjustment, while Plaintiff believes only a 3% adjustment is permitted. Rather, Plaintiff alleges that ***no Projected Sold Adjustment is permitted at all*** as a matter of law. This question cannot be determined through appraisal.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Class:

> All Indiana citizens insured by Defendant who, from the earliest allowable time through the date an Order granting class certification is entered, received compensation for the total loss of a covered vehicle, where compensation was based on a valuation report prepared by Mitchell and the ACV was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine ACV.

34.     Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the

Judge(s) and Court staff assigned to this case and their immediate family members.

35.     Plaintiff reserves her right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses, or modified in any other way.

36.     **Numerosity.** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of Class members, the precise number is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

37.     **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

     a.  Whether Defendant systemically used Mitchell's Vehicle Valuation Reports in adjusting total loss claims to determine ACV;

     b.  Whether the Mitchell Vehicle Valuation Reports included Projected Sold Adjustments to the value of the comparable vehicles that reduced the base value, and thus the claim amount paid by Defendant for the ACV of Plaintiff's and Class members' total loss vehicles;

     c.  Whether representing to claimants that the Mitchell valuation equated with the total loss vehicle's ACV was deceptive;

     d.  Whether Defendant's deceptive acts and improper practices injured Plaintiff and members of the Class;

e.   Whether Defendant's acts violated its obligations under the policy of insurance;

f.   Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the calculation of damages; and

g.   Whether Plaintiff and members of the Class are entitled to an injunction restraining Progressive's future deceptive acts and practices.

38.   **Typicality.** The claims of the Plaintiff, who is the representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members of the proposed Class, including the Plaintiff, depend on a showing of the acts of Progressive giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and the other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

39.   **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members whom she seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

40.   **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful

conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT 1
## BREACH OF CONTRACT

41.     Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

42.     This Count is brought by the Plaintiff on behalf of the Class.

43.     Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

44.     Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

45.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

46.     Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious Projected Sold Adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

47.     Defendant also failed to comply with Indiana law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith

to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear"; "Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable individual would have believed the individual was entitled by reference to written or printed advertising material accompanying or made part of an application." IND. CODE § 27-4-1-4.5.

48.     Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

49.     As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 2
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

50.     Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Count, as if fully alleged herein.

51.     This Count is brought by the Plaintiff on behalf of the Class.

52.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

53.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one

13

of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

54.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of their total-loss payments to insureds, as alleged herein.

55.     Defendant also failed to comply with Indiana law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear"; "Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable individual would have believed the individual was entitled by reference to written or printed advertising material accompanying or made part of an application." IND. CODE § 27-4-1-4.5.

56.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

        a.   Intentionally applying Projected Sold Adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

        b.   Failing to pay insureds the ACV of their total-loss vehicles;

c.   Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d.   Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

57.   Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a Projected Sold Adjustment.

**COUNT 3**
**UNJUST ENRICHMENT**

58.   Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

59.   This Count is brought by the Plaintiff on behalf of the Class.

60.   Plaintiff pleads this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

61.   Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

62.   Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

63.   Defendant also failed to comply with Indiana law by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue"; "[n]ot attempting in good faith

to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear"; "Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and "[a]ttempting to settle a claim for less than the amount to which a reasonable individual would have believed the individual was entitled by reference to written or printed advertising material accompanying or made part of an application." IND. CODE § 27-4-1-4.5.

64.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Indiana law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

65.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

66.     Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

**COUNT 4**
**DECLARATORY JUDGMENT**

67.     Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

68.     This Count is brought by the Plaintiff on behalf of the Class.

69.     A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of

Plaintiff and the Class arising under that policy.

70.     Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary Projected Sold Adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

71.     Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

72.     As a result of these breaches of contract, Plaintiff and the Class members have been injured.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks judgement in Plaintiff's favor and in favor of the Class as follows:

A.  An Order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B.  An award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiff and the Class in an amount to be determined at trial, plus interest, in accordance with law;

C.  Disgorgement of Defendant's profits;

D.  Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendant's described herein;

E.  An award Plaintiff's and the Class' costs of suit, including reasonable attorneys' fees as provided by law; and

F.  An award such further and additional relief as is necessary to redress the harm caused by Defendant's unlawful conduct and as the Court may deem just and proper under the circumstances.

Dated: <u>May 13, 2022</u>                                       Respectfully submitted,

<u>/s/ Scott D. Gilchrist</u>
Scott D. Gilchrist, #16720-53
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
sgilchrist@cohenandmalad.com
T : 317-636-6481
F : 317-636-2593

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.*
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.*
Florida Bar No. 0100537
Christopher Gold, Esq.*
Florida Bar No. 088733
scott@edelsberglaw.com
chris@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471

*pro hac vice forthcoming*

***Counsel for Plaintiff and the Proposed Class***