UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HEATHER SCHROEDER, | ) |
| *Plaintiff*, | ) ) ) |
| vs. | ) ) No. 1:22-cv-00946-JMS-MPB ) |
| PROGRESSIVE PALOVERDE INSURANCE COMPANY, | ) ) ) ) |
| *Defendant*. | ) |

**ORDER**

Plaintiff Heather Schroeder was in a car accident and submitted a claim to her auto insurer, Defendant Progressive Paloverde Insurance Company ("Progressive"). Progressive declared Ms. Schroeder's vehicle a total loss and purported to pay her the Actual Cash Value ("ACV") of the vehicle, but Ms. Schroeder claims that Progressive undervalued her vehicle by applying a "Projected Sold Adjustment" ("PSA") to the value of comparable vehicles used in determining her vehicle's ACV. Ms. Schroeder initiated this putative class action against Progressive on May 13, 2022 and asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory judgment. Progressive has filed a Motion to Dismiss, [Filing No. 36], which is now ripe for the Court's consideration.

**I.**
**STANDARD OF REVIEW**

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing

1

the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. See *Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. See *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations set forth in the Complaint, which the Court must accept as true at this time:

### A. The Progressive Auto Insurance Policy

Progressive issued a uniform automobile insurance policy to Ms. Schroeder and all putative class members (the "Policy"). [Filing No. 32 at 2.] Under the Policy, Progressive agrees to "pay for sudden, direct[,] and accidental loss" to insured vehicles. [Filing No. 32-1 at 20.] The Policy provides:

1. The limit of liability for loss to a covered auto, non-owned auto, or custom parts or equipment is the lowest of:
    a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
    b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;

> c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
> d. the Stated Amount shown on the declarations page for that covered auto.

[Filing No. 32-1 at 24] (emphasis omitted).] The Policy further states that "[t]he actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs," that Progressive "may use estimating, appraisal, or injury evaluation systems to assist [it] in adjusting claims under this policy and to assist [it] in determining the amount of damages, expenses, or loss payable under this policy," and that "[s]uch systems may be developed by [it] or a third party and may include computer software, databases, and specialized technology." [Filing No. 32-1 at 25; Filing No. 32-1 at 30.]

### B. Progressive's Handling of Total-Loss Claims

Progressive uses valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the ACV of total-loss vehicles. [Filing No. 32 at 1.] Specifically, Progressive (through Mitchell) systemically applies a PSA that results in a downward adjustment to the base values of the comparable vehicles used to calculate the ACV of their insureds' vehicles. [Filing No. 32 at 2.] The PSA is applied to the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. [Filing No. 32 at 2.] The valuation reports provide a statement that the PSA is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." [Filing No. 32 at 2-3.] Progressive does not apply a PSA to comparable vehicles when determining the ACV of total-loss vehicles owned by insureds in Ohio, but it does for insureds in Indiana. [Filing No. 32 at 11-12.]

Neither Progressive nor Mitchell has ever conducted a study or research to determine whether the "consumer purchasing behavior" exists and impacts ACV in the modern used-car market. [Filing No. 32 at 3.] Additionally, until July 2021, Progressive, through its vendors, threw out all data where the list price equaled or exceeded the sold price. [Filing No. 32 at 3.] It also

excludes from "projected sold" calculations data where the list price equaled the sold price and all data where the sold price exceeds the list price, "even though examples abound of dealerships that charge more than [the] advertised price to customers purchasing a vehicle with cash – i.e. not providing the dealer the opportunity to profit through financing the sale or acquiring a trade-in – which is particularly relevant to the inquiry of determining a vehicle's [ACV]." [Filing No. 32 at 3.]

Progressive does not account for whether the comparable vehicle was purchased with cash, or whether there were ancillary purchases or transactions that may influence the sales price but not the ACV – e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase. [Filing No. 32 at 3.] Progressive also ignores other market realities, such as that car dealerships do not negotiate off of Internet-advertised prices, and that differences between the list and sales prices do not reflect a negotiation of the vehicle's cash value, but rather that a dealer shifted its profits to other components of the transaction (e.g., profits made through financing or trade-in, ancillary products, employee discounts, etc.). [Filing No. 32 at 4.] Progressive's pattern and practice of undervaluing comparable vehicles results in losses to the insureds when valuing their total-loss vehicle's ACV. [Filing No. 32 at 4.] The Policy does not permit reducing a vehicle's ACV for "invented or arbitrarily assumed justifications." [Filing No. 32 at 10.]

### C. Ms. Schroeder's Progressive Claim

On February 19, 2019, Ms. Schroeder was involved in an automobile accident and submitted a property damage claim to Progressive under the Policy. [Filing No. 32 at 5-6.] Progressive declared her 2018 Toyota Corolla to be a total loss and provided her with a Vehicle

Valuation Report from Mitchell. [Filing No. 1-2;[1] Filing No. 32 at 6.] The Vehicle Valuation Report listed 13 comparable vehicles that were recently sold or offered for sale at dealerships in the same geographic area as Ms. Schroeder. [Filing No. 1-2 at 5.] Four of the thirteen vehicles had been sold, and the Vehicle Valuation Report reflected their sold price, adjusted to make them more comparable to Ms. Schroeder's vehicle (e.g., the prices of features Ms. Schroeder's vehicle had but the comparable vehicle did not were added to the sold price). [Filing No. 1-2 at 7-8.] The other nine comparable vehicles were listed for sale, but had not yet sold. [Filing No. 1-2 at 9-13.]

Progressive used the thirteen comparable vehicles to determine the ACV of Ms. Schroeder's vehicle, and the Vehicle Valuation Report reflected that PSAs were applied to the nine vehicles that had not yet been sold in the amounts of $895, $942, $950, $946, $894, $945, $917, $947, and $940. [Filing No. 1-2 at 9-13; Filing No. 32 at 6.] Without the PSA deductions, Ms. Schroeder would have received an ACV payment that was $644.34 higher than the payment that she received. [Filing No. 32 at 12.]

**D. The Lawsuit**

Ms. Schroeder initiated this litigation on May 13, 2022, [Filing No. 1], and filed the operative Amended Complaint on August 1, 2022, [Filing No. 32]. She sets forth claims for breach of contract and breach of the duty of good faith and fair dealing, and requests a declaratory judgment that Progressive's application of PSAs results in a valuation of less than the ACV Progressive is required to pay under the Policy and that this practice constitutes a breach of the

---

[1] As Progressive points out in its brief in support of its Motion to Dismiss, Ms. Schroeder attached the Mitchell Vehicle Valuation Report for her vehicle to her original Complaint, [Filing No. 1-2], but attached a Mitchell Vehicle Valuation Report for another individual's vehicle to her Amended Complaint, [Filing No. 32-2]. Like Progressive, the Court assumes this was an error and Ms. Schroeder does not state otherwise in her response brief. [*See* Filing No. 38.] Accordingly, the Court cites to the Vehicle Valuation Report attached to Ms. Schroeder's original Complaint. [Filing No. 1-2.]

Policy.  [Filing No. 32 at 15-18.]  Ms. Schroeder brings her claims individually and on behalf of the following class:

> All Indiana citizens insured by Progressive who, from the earliest allowable time through the date an Order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a vehicle valuation report prepared by Mitchell and the ACV was decreased based upon [PSAs] to the comparable vehicles used to determine ACV.

[Filing No. 32 at 12.]  Progressive has moved to dismiss all of Ms. Schroeder's claims.  [Filing No. 36.]

### III.
### DISCUSSION

**A.  Breach of Contract Claim**

In support of its Motion to Dismiss, Progressive argues that Ms. Schroeder does not identify any specific Policy provision that Progressive breached.  [Filing No. 37 at 9-10.]  It asserts that Ms. Schroeder does not set forth what she contends her vehicle's ACV was at the time of the loss, the amount necessary to replace her vehicle, the stated amount on the declarations page of her Policy, or how much Progressive paid her to settle her claim.  [Filing No. 37 at 10.]  Progressive contends that "[t]o the contrary, the Amended Complaint and attached exhibits show that [Progressive] determined the value of [Ms. Schroeder's] total loss exactly the way it said it would under the Policy: the Valuation Report shows that [Progressive] used Mitchell, who provides an 'estimating, appraisal, or injury evaluation system,'…and in doing so 'considered the market value, age, and condition of the vehicle at the time [of] the loss.'"  [Filing No. 37 at 10 (quoting Filing No. 32-1 at 21).]  It argues further that simply identifying the amount of the PSAs applied to the nine comparable vehicles, or the average of the PSAs, "does not support the inferential leap that Progressive…paid less than ACV."  [Filing No. 37 at 11.]  Progressive notes that "even if the PSAs that were applied to some of the comparable vehicles were 'improper'…that does not mean that

6

[Ms. Schroeder's] total-loss vehicle was worth the amount reflected in the Valuation Report plus the average amount of the PSAs," but rather Ms. Schroeder "must allege the amount she thinks the vehicle was actually worth, and she must allege that Progressive…paid her less than that amount." [Filing No. 37 at 11.] Progressive argues that Mitchell assigned to Ms. Schroeder's vehicle a base value that was higher than three of the four comparable vehicles that had been sold. [Filing No. 37 at 11.] It asserts that, under Ms. Schroeder's interpretation of the Policy, it "could have determined ACV based only on the lower 'sold price' [for] comparable vehicles and paid [Ms. Schroeder] less money than she ultimately received under [Progressive's] actual valuation, and been in full compliance with the Policy simply because such a valuation would not include a PSA." [Filing No. 37 at 12 (emphasis omitted).] Finally, Progressive argues that the Policy does not entitle Ms. Schroeder to have her loss calculated by any specific method or technique, and expressly permits Progressive to use a third-party valuation service like Mitchell to determine her vehicle's ACV. [Filing No. 37 at 12.]

In her response, Ms. Schroeder argues that she sufficiently alleges that Progressive breached the Policy's provision requiring it to pay the ACV, reduced by the applicable deductible (or another limit of liability), and that these allegations "provide [Progressive with] fair notice of what Policy provisions [Ms. Schroeder] contends were breached." [Filing No. 38 at 9-10.] She asserts that she has adequately alleged that application of the PSAs resulted in a payment to her of less than the ACV by alleging that car dealers do not negotiate down from the listed price of used vehicles; that by reducing the listed price of comparable vehicles by applying the PSAs, Progressive is paying less than the market value of the vehicle and underpaying ACV; and that Progressive undercalculated the ACV of her vehicle by $644.34. [Filing No. 38 at 10.] Ms.

Schroeder points to cases from outside of the Seventh Circuit that she contends involve similar allegations and which were not dismissed at the pleadings stage. [Filing No. 38 at 10-11.]

In its reply, Progressive reiterates its argument that Ms. Schroeder has not pointed to a Policy provision that it has breached, and notes that she "does not dispute her failure to allege what [Progressive] paid to settle [her] claim or what she believes her car was actually worth in the moments before her accident occurred." [Filing No. 44 at 3.] Progressive asserts that "whether the settlement payment would have been different had [Progressive] used a different methodology is irrelevant to the question of whether the payment [Progressive] made to [Ms. Schroeder] was lower than what she was owed," and that Ms. Schroeder must allege that Progressive paid her an amount that was less than her loss but does not do so. [Filing No. 44 at 3-4 (emphasis omitted).] Progressive reiterates that the Policy specifically allows it to use "estimating, appraisal, or injury evaluation systems" developed by a third party "to assist [it] in determining the amount of damages, expenses, or loss payable" under the Policy. [Filing No. 44 at 4 (quotations and citations omitted).] Finally, Progressive attempts to distinguish the cases upon which Ms. Schroeder relies. [Filing No. 44 at 6.][2]

The Court has diversity jurisdiction over this matter, and the parties appear to agree that Indiana law applies to Ms. Schroeder's claims. Absent a disagreement, the Court will apply Indiana law. *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1120 (7th Cir. 1998);

---

[2] The Court acknowledges the two Notices of Filing Supplemental Authority filed by Ms. Schroeder. [Filing No. 45; Filing No. 47.] The Court generally does not consider supplemental authority unless it is a relevant appellate opinion decided after the close of briefing but before ruling. Additionally, the Court notes that the *Volino* case is available on Westlaw and was located by the Court in its own research. However, given the factual similarities between this case and the two cases submitted by Ms. Schroeder, the Court has considered Ms. Schroeder's Notices. For guidance regarding the propriety of filing supplemental authority, counsel is directed to the Court's updated Practices and Procedures found on the Court's website.

*Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits…. Courts do not worry about conflict of laws unless the parties disagree on which state's law applies. We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them)."). Under Indiana law, the three elements of a breach of contract claim are: (1) the existence of a contract; (2) the defendant's breach thereof; and (3) damages suffered as a result. *Trustees of Indiana Univ. v. Spiegel*, 186 N.E.3d 1151, 1158 (Ind. Ct. App. 2022); *see also SelectSun GmbH v. Porter, Inc.*, 928 F.3d 550, 554 (7th Cir. 2019) ("[U]nder Indiana law, a breach of contract claim requires showing the existence of a contract, the defendant's breach, and damages."). The parties agree that Ms. Schroeder's vehicle was covered by the Policy, but Progressive disputes that she has adequately alleged the second and third elements of a breach of contract claim. The Court finds, however, that she has.

First, Ms. Schroeder alleges that Progressive breached the Policy's provision requiring it to pay for "sudden, direct and accidental loss to a…covered auto" and to pay the limit of liability which, for her vehicle, was "the actual cash value of the…damaged property at the time of the loss reduced by the applicable deductible." [Filing No. 32-1 at 19; Filing No. 32-1 at 24.] The Court acknowledges that the Policy Ms. Schroeder attaches to her Amended Complaint appears to permit Progressive to use a third-party such as Mitchell to provide valuation information, but that does not absolve Progressive of the responsibility to pay the vehicle's ACV. Ms. Schroeder has alleged that Mitchell's subtraction of the PSAs from the prices of comparable vehicles, relied upon by Progressive, resulted in Progressive not paying the ACV. This is enough to allege that Progressive breached a Policy provision at the motion to dismiss state. *See, e.g., Smith v. Southern Farm*

9

*Bureau Cas. Ins. Co.*, 18 F.4th 976, 980-81 (8th Cir. 2021) (reversing district court's dismissal of breach of contract claim because if plaintiff's allegations regarding PSA deductions were true, "then [defendant] did not consider the truck's fair market value; it considered an artificially lower value, in breach of its contractual duty") (emphasis omitted); *Volino v. Progressive Cas. Ins. Co.*, 2022 WL 5242894 (S.D. N.Y. Oct. 6, 2022) (denying Progressive's motion to dismiss breach of contract claim because plaintiff had adequately alleged "that the amount of the PSA is the measure of underpayment, and the value Defendants calculate once the PSA is removed is the [ACV]," and that "the application of the PSA systematically breaches the contracts because the PSA do[es] not reflect market realities…and run[s] contrary to customary automobile dealer practices") (quotation omitted); *Hobson v. Hartford Ins. Co. of the Midwest*, 2022 WL 4536470, at *5 (D. N.J. Sept. 28, 2022) ("If [plaintiff's] allegations that Hartford Insurance applied the PSA to the ACV calculus in this arbitrary manner are true, then Hartford Insurance did not pay the ACV of [plaintiff's vehicle]. Instead, Hartford Insurance paid an artificially lower value, in breach of its contractual duty. Accordingly, [plaintiff] plausibly states a claim for breach of contract.").[3]

Second, Ms. Schroeder alleges that the application of PSAs to the comparable vehicles resulted in payment to her that was $644.34 less than it should have been. Specifically, she alleges:

> Were it not for [the PSA] adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by [Progressive] for ACV. Specifically, for [Ms. Schroeder], were it not for this improper adjustment, the payment of ACV by [Progressive] would have been $644.34 higher, before adding the related increase in payments for applicable sales taxes.

---

[3] While these cases are not binding on this Court, the Court finds them instructive nonetheless because they involve nearly identical allegations to the allegations Ms. Schroeder sets forth in this case.

10

[Filing No. 32 at 12].] While it is not entirely clear from Ms. Schroeder's allegations exactly how she arrived at the $644.34 figure, she need not explain her damages at the motion to dismiss stage, and alleging that the base values of the comparable vehicles would have been higher, which would have made the ACV of her vehicle higher, is enough. *See Williams v. Progressive Direct Ins. Co., --- F.Supp.3d ----, 2022 WL 4482726, at \*10 (D. Del. Sept. 27, 2022)* (denying Progressive's motion to dismiss breach of contract claim related to Mitchell's PSA deduction because allegations that "the application of the [PSA] to reduce the value of comparable cars, which in turn reduces the base value used to calculate the market value of the total loss car[,] plausibly states a claim for breach of contract"); *Petri v. Drive New Jersey Ins. Co., 2022 WL 4483437, at \*5 (D. N.J. Sept. 26, 2022)* (denying defendants' motion to dismiss in factually similar case where plaintiffs alleged that defendants were "obligated to pay a yet-to-be-determined amount of money but paid less than that amount," and noting that plaintiffs' allegations were "about as close to a contract law casebook's definition of breach as one could get," and that although the damages allegations "perhaps could have been more precise, it seems sufficient at the motion to dismiss stage for Plaintiffs to allege…that the ACV for their vehicles was greater than the amount Defendants paid").

While Ms. Schroeder will certainly be required to provide evidence that supports her allegations later in this litigation (including that she suffered damages and, consequently, has standing to sue), she has plausibly alleged that Progressive breached the terms of the Policy by relying on Vehicle Valuation Reports which include PSA deductions for comparable vehicles. Progressive's Motion to Dismiss Ms. Schroeder's breach of contract claim is **DENIED**.

### B. Breach of the Covenant of Good Faith and Fair Dealing Claim

In support of its Motion to Dismiss, Progressive argues that Ms. Schroeder "has not pled facts tending to show that [Progressive] acted tortiously in settling [her] total-loss claim." [Filing No. 37 at 12.] It contends that Ms. Schroeder "simply disagrees with one component of the methodology [Progressive] used to value her total loss vehicle – a methodology which was expressly contemplated by her Policy," and that "[n]othing in [her] Complaint demonstrates that [Progressive] acted with dishonest purpose, moral obliquity, furtive design, or ill will." [Filing No. 37 at 13.]

In her response, Ms. Schroeder argues that she repeatedly alleges in the Amended Complaint that Progressive engaged in "conscious wrongdoing by…intentionally and wrongfully underpaying total loss insurance claims." [Filing No. 38 at 11.]

Progressive argues in its reply that Ms. Schroeder uses the word "intentionally" in her Amended Complaint in a conclusory fashion, and that the PSA is part of Mitchell's third-party software that Progressive licenses to value total-loss claims and "[t]here are simply no allegations that [Progressive] has anything to do with the data underlying the PSA or how it is calculated – and there are certainly no facts supporting an inference that [Progressive] acted with furtive design." [Filing No. 44 at 7-8.]

Under Indiana law, implied in all insurance contracts is the duty of an insurer to deal with its insured in good faith. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). Although the scope of the duty of good faith is not precisely defined, the Indiana Supreme Court has specifically recognized four grounds for a finding of a breach of the duty of good faith and fair dealing: "(1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure

an insured into settlement of his [or her] claim." *Id.* at 519. A claim of bad faith based on a denial of coverage or refusal to pay exists when the insurer denies a claim despite knowing it lacks a rational, principled basis for doing so. *Friedline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). But such a claim does not necessarily arise every time an insurance claim is denied or not resolved to the insured's liking, even if the denial is erroneous. *Erie Ins. Co.*, 622 N.E.2d at 520. In other words, "poor judgment and negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present. A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Erie Ins. Exchange v. Craighead*, 192 N.E.3d 195, 204 (Ind. Ct. App. 2022).

The following allegations in the Amended Complaint support the conclusion that Ms. Schroeder has pled more than "poor judgment or negligence," but rather intentional conduct with a dishonest purpose:

- Progressive's application of the PSAs is "contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices," [Filing No. 32 at 2];

- Progressive "thumbs the scale by discarding vast amounts of relevant data that contradict applying a [PSA]," including data where the sold price exceeded the list price, "even though examples abound of dealerships that charge more than advertised price to customers purchasing a vehicle with cash," [Filing No. 32 at 3];

- Progressive "intentionally distorts the data, excludes transactions that undercut its false hypothesis, and ignores market realities, all for the purpose of applying a capricious and unjustified [PSA] to artificially deflate the value of total loss vehicles," [Filing No. 32 at 4];

- Progressive "provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support any [PSA], much less the specific downward adjustments used in [Ms. Schroeder's] valuation reports," [Filing No. 32 at 6-7];

- Progressive "begins the process of valuing loss vehicles using comparative methodology but improperly deviates from that process by thumbing the scales against the insured," [Filing No. 32 at 8];

- Progressive "thumbs the scale by discarding vast amounts of relevant data that contradict applying a [PSA] and by failing to control for material variables, including whether there were ancillary purchases or transactions that may influence what is recorded as the 'sales price' but do not influence the ACV (e.g., whether the customer traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase)," [Filing No. 32 at 9];

- Progressive "has not exercised even a modicum of curiosity to investigate whether market realities support the application of a [PSA]," [Filing No. 32 at 9]; and

- Progressive breached the duty of good faith and fair dealing by "[i]ntentionally applying [PSAs] to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles"; "[f]ailing to pay insureds the ACV of their total-loss vehicles"; "[i]nterpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims"; and "[i]nventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable," [Filing No. 32 at 17].

Ms. Schroeder has alleged intentional conduct on the part of Progressive (application of the PSAs despite an absence of data demonstrating its appropriateness), taken with a dishonest purpose (to pay insureds less than the ACV of their total-loss vehicles). This is sufficient to state a claim for breach of the covenant of good faith and fair dealing, and the Court **DENIES** Progressive's Motion to Dismiss that claim.

### C. Declaratory Judgment Claim

Progressive argues in support of its Motion to Dismiss that Ms. Schroeder lacks standing to assert her declaratory judgment claim because she cannot allege any likelihood of future injury. [Filing No. 37 at 13-14.] It acknowledges that Ms. Schroeder alleges that Progressive's policies are ongoing and alleges that it continues to breach the Policy, but asserts that "there are no facts

demonstrating a certainly impending risk of future injury to Ms. Schroeder." [Filing No. 37 at 14 (quotation omitted).] It contends that "[Ms. Schroder] might someday be in another automobile accident that results in a total loss and have a settlement issued under the same insurance policy based on a valuation report that includes a PSA [but that possibility] is, at best, speculative and remote." [Filing No. 37 at 14 (quotation omitted).] Finally, Progressive argues that Ms. Schroeder's declaratory judgment claim is duplicative of her breach of contract claim because she seeks a declaration that Progressive's deduction of PSAs is a breach of the Policy. [Filing No. 37 at 14-15.]

In response, Ms. Schroeder argues that she alleges a present injury, which is enough for her declaratory judgment claim. [Filing No. 38 at 15.] She notes that "this action seeks to determine the rights and obligations of the parties under the insurance contracts between them, and [her] injuries would be redressed by the declaratory relief sought." [Filing No. 38 at 16.] Ms. Schroeder also argues that her dispute with Progressive is ongoing because it has not paid her the amount she claims is due under the Policy. [Filing No. 38 at 16-17.] Further, she contends that the Court is not required to dismiss her declaratory judgment claim if it is duplicative, that she is permitted to plead alternative theories of liability, and that her declaratory judgment claim "is not wholly subsumed by the claim for breach of contract." [Filing No. 38 at 17-18.]

Progressive argues in its reply that Ms. Schroeder conflates the concepts of standing and ripeness, and that she only alleges a past injury that took place when Progressive paid her the settlement amount for her vehicle. [Filing No. 44 at 8.] It reiterates its arguments that any future injury based on another automobile accident would be speculative at best and that the declaratory judgment claim is duplicative of the breach of contract claim. [Filing No. 44 at 9-10.]

The Declaratory Judgment Act "permits a federal court to declare the rights of a party," and it "confers discretion on the courts[,] rather than an absolute right upon the litigant." *Green v. Mansour*, 474 U.S. 64, 72 (1985). "The propriety of issuing a declaratory judgment may depend upon equitable considerations, and is also informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* Like a claim for injunctive relief, a claim for declaratory relief requires ongoing or impending harm. *Swanigan v. City of Chicago*, 881 F.3d 577, 583 n.2 (7th Cir. 2018); *Feit v. Ward*, 886 F.2d 848, 857 n.11 (7th Cir. 1989).

While Ms. Schroeder does allege that Progressive's deduction of the PSAs from comparable vehicles is an ongoing practice, her lawsuit seeks damages for Progressive's past conduct of paying her less than the ACV for her total-loss vehicle. She seeks "a declaration that in paying total loss claims with first-party insureds, it is a breach of the insurance contract with Progressive for Progressive to base the valuation and payment of claims on values of comparable vehicles that have been reduced by factually erroneous [PSAs]" and a declaration that "Progressive's application of unfounded [PSAs] results in a valuation of less than the [ACV] Progressive is required under its insurance contracts to pay insureds." [Filing No. 32 at 18.] This is "'backward-looking' relief, not 'forward-looking' relief from a 'future injury.'" *Williams v. Progressive Direct Ins. Co.*, --- F.Supp.3d ----, 2022 WL 4482726, at *11 (D. Del. Sept. 27, 2022) (dismissing plaintiff's claim seeking a declaration that "in paying total-loss claims…it is a breach of [Progressive's Policy] for [Progressive] to base the valuation and payment of claims on values of comparable vehicles that have been reduced by the [PSAs]").

Additionally, even if a declaratory judgment action is within their jurisdiction, "the federal courts have discretion to decline to hear [it]." *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987) (citations omitted). Courts commonly exercise their

16

discretion and dismiss declaratory judgment claims where they are duplicative of breach of contract claims. *See, e.g.*, *Cliffs Mining Co. v. Wisconsin Electric Power Co.*, 2018 WL 6181470, at *7 (E.D. Wis. 2018) (dismissing declaratory judgment claim and finding that because that claim duplicated breach of contract claim, it "serves no useful purpose"); *Hess v. Biomet, Inc.*, 2017 WL 661511, at *12 (N.D. Ind. 2017) ("Because [the declaratory judgment claim] fails to add any viable claim for relief not already raised in [the breach of contract claim], the Court in an exercise of its discretion dismisses [the declaratory judgment claim]") (emphasis omitted). Here, Ms. Schroeder simply seeks a declaration that Progressive's deduction of PSAs from the value of comparable vehicles results in a valuation of less than the ACV for insured vehicles, and that this practice constitutes a breach of the Policy. [*See* Filing No. 32 at 18.] This is duplicative of her breach of contract claim and the Court, in its discretion, finds that dismissal of the declaratory judgment claim is appropriate.

Accordingly, because Ms. Schroeder lacks standing to seek declaratory relief and since her declaratory judgment claim is duplicative of her breach of contract claim, the Court **GRANTS** Progressive's Motion to Dismiss as to Ms. Schroeder's declaratory judgment claim.

### D. Possible Indiana Code § 27-4-1-4.5 Claim

Progressive argues in support of its Motion to Dismiss that Ms. Schroeder's breach of contract and breach of the covenant of good faith and fair dealing claims are "an impermissible attempt to privately enforce Ind. Code § 27-4-1-4.5" because she bases those claims on Progressive's alleged violation of that statute. [Filing No. 37 at 15.] Progressive contends that there is no private right of action under § 27-4-1-4.5 and that "to the extent [Ms. Schroeder's] claims are based on the contention that [Progressive] violated § 27-4-1-4.5, or any other provision

of the unfair claims settlement practices article, the claims should be dismissed with prejudice." [Filing No. 37 at 15-16.]

In her response, Ms. Schroeder argues that she "did not attempt to bring a claim for violation of § 27-4-1-4.5, and merely mentions, only briefly, that Progressive's failure to settle her claim in good faith is a violation of Indiana law." [Filing No. 38 at 13.] She contends that she refers to § 27-4-1-4.5 to support her breach of contract claim, but does not rely upon it, and that she has stated claims for breach of contract and breach of the covenant of good faith and fair dealing "irrespective of any provision in § 27-4-1-4.5." [Filing No. 38 at 13-14.]

Progressive argues in its reply that Ms. Schroeder has not alleged that anything in the Policy conflicts with § 27-4-1-4.5, nor that Progressive violated that statute. [Filing No. 44 at 10-11.]

The Court acknowledges Ms. Schroeder's clarification that she does not intend to bring a claim under § 27-4-1-4.5. In light of that clarification, Progressive's Motion to Dismiss any potential claim under § 27-4-1-4.5 is **DENIED AS MOOT**.

## IV.
### Conclusion

For the foregoing reasons, Progressive's Motion to Dismiss is **DENIED IN PART** as to Ms. Schroeder's breach of contract and breach of the duty of good faith and fair dealing claims, **GRANTED IN PART** as to Ms. Schroeder's declaratory judgment claim, and **DENIED IN PART AS MOOT** as to any potential claim under Indiana Code § 27-4-1-4.5. [36.] The breach of contract and breach of the covenant of good faith and fair dealing claims shall proceed and no partial final judgment shall issue.

Date: 12/19/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**