UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HEATHER SCHROEDER and MISTY TANNER, *individually and on behalf of all others similarly situated,* | ) ) ) ) | |
| *Plaintiffs,* | ) ) | 1:22-cv-00946-JMS-MKK |
| *vs.* | ) ) ) | |
| PROGRESSIVE PALOVERDE INSURANCE COMPANY and PROGRESSIVE SOUTHEASTERN INSURANCE CO., | ) ) ) | |
| *Defendants.* | ) ) | |

## ORDER

Plaintiffs Heather Schroeder and Misty Tanner purchased automobile insurance from Defendants Progressive Paloverde Insurance Company ("Progressive") and Progressive Southeastern Insurance Co. ("Progressive Southeastern"), respectively.  Both were involved in car accidents and submitted property damage claims to their insurers.  They brought this litigation on behalf of themselves and a putative class, alleging that Defendants failed to properly value their claims.  Ms. Schroeder has now filed a Motion for Class Certification, which is ripe for the Court's review.  [Filing No. 92.][1]

_____

[1] Ms. Schroeder filed a second Motion for Class Certification that is duplicative of her first Motion for Class Certification except to the extent that it attaches certain redacted exhibits.  [Filing No. 96.]  While the Court considers the redacted exhibits, it **DENIES** Ms. Schroeder's second Motion for Class Certification, [Filing No. 96], as duplicative.  Additionally, Defendants have filed a Motion for Oral Argument on Plaintiff's Motion for Class Certification.  [Filing No. 111.]  Because the parties' briefs afforded the Court an adequate basis on which to rule on the Motion for Class Certification without the assistance of oral argument, the Court **DENIES** Defendants' Motion for Oral Argument, [Filing No. 111].  Finally, both Ms. Schroeder and Progressive have filed Motions for Leave to File Supplemental Authority, in which they ask the Court to consider cases decided after briefing on the Motion for Class Certification had concluded.  [Filing No. 122; Filing No. 127.]  While the Court generally disfavors the filing of supplemental authority and is capable of

# I.
## STANDARD OF REVIEW

In deciding whether to certify a class, the Court may not blithely accept as true even the most well-pleaded allegations of the complaint, but must instead "make whatever factual and legal inquiries are necessary under [Federal Rule of Civil Procedure] 23" to resolve contested issues. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). The Court must first find that the putative class is identifiable. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Then, the Court must find that the class satisfies the four prerequisites set forth in Federal Rule of Civil Procedure 23(a), which are that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Class certification is not appropriate unless the named plaintiff establishes all four prerequisites. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 US. 147, 156 (1982).

If the putative class satisfies the prerequisites of Rule 23(a), the Court must additionally find that it satisfies the requirements set forth in Rule 23(b), which vary depending upon which of three different types of classes is proposed. *Oshana*, 472 F.3d at 513; *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 760 (7th Cir. 2000). Ms. Schroeder proceeds under Rule 23(b)(3), which requires her to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

---

conducting its own legal research and uncovering relevant caselaw, it **GRANTS** the parties' motions, [Filing No. 122; Filing No. 127], due to the ever-changing landscape of potentially relevant cases and the fact that each side has submitted supplemental authority. The Court has considered the supplemental authority the parties have provided.

## II.
### BACKGROUND[2]

**A.     The Policy**

Progressive issues form automobile insurance policies ("the Policy") to insureds with materially identical language.  [Filing No. 93-2 at 26-29; Filing No. 96-3.]  The Policy provides, in relevant part:

PART IV – DAMAGE TO A VEHICLE

*                    *                    *

INSURING AGREEMENT – COMPREHENSIVE COVERAGE

If you pay the premium for this coverage, we will pay for sudden, direct and accidental loss to a:

1.  covered auto…

[Filing No. 96-3 at 20-21 (emphasis omitted).]

The Policy limits Progressive's liability to the lowest of:

a.      the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;

b.      the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;

c.      the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or

d.      the Stated Amount shown on the declarations page for that covered auto.

---

[2] To the extent the Court quotes from sealed filings, the information quoted is integral to the Court's decision and therefore must be publicly available.  *In re Sprecht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality.").

[Filing No. 96-3 at 25 (emphasis omitted).]   The Policy states that "[t]he actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs." [Filing No. 96-3 at 26.]

### B.   How Progressive Determines Actual Cash Value

#### 1.   Mitchell's Vehicle Valuation Report

Progressive uses a third-party vendor, Mitchell International, Inc. ("Mitchell"), to generate a vehicle valuation report in order to determine the actual cash value ("ACV") of an insured vehicle.  [Filing No. 93-2 at 37-38.]  After a Progressive claims adjuster inputs the information corresponding with the insured vehicle, a report is generated through the Total-Loss WorkCenter ("WCTL") ("the Mitchell Report").  [Filing No. 93-2 at 37-38; Filing No. 93-2 at 40-42.]  In generating the Mitchell Report, Mitchell identifies the listed prices of comparable vehicles and deducts a Projected Sold Adjustment ("PSA") from those list prices.  [Filing No. 93-2 at 38; Filing No. 93-2 at 42-43; Filing No. 93-2 at 76; Filing No. 96-6 at 13.]  The PSA is to "reflect consumer purchasing behavior (negotiating a different price than the list price)."  [Filing No. 93-2 at 43.]

#### 2.   Calculating the PSA

In order to calculate the PSA, Mitchell uses a company called J.D. Power.  [Filing No. 93-7 at 17-18.]  Mitchell gives J.D. Power list price data that it gathers from internet advertisements and J.D. Power compares the data to sales data from its "Power Information Network" ("PIN") of over 7,000 dealers.  [Filing No. 93-7 at 22-24.]  For each type of vehicle (same year, make, and model) within a designated area, J.D. Power conducts a statistical analysis of at least 40 separate transactions to determine a PSA that best describes the relationship between list prices and sale prices for vehicles of that type.  [Filing No. 93-7 at 97-99.]

In calculating the PSA, J.D. Power excludes any data that reflects atypical negotiation or potential data errors – for example, if a vehicle was listed at $20,000 and sold for $9,000, J.D. Power would exclude that transaction.  [Filing No. 93-7 at 62-64; Filing No. 93-7 at 89-91.]  It also excludes all transactions where the sale price exceeds the list price and until July 2021, it also excluded every transaction where the vehicle sold for list price.  [Filing No. 93-5 at 3-5; Filing No. 93-7 at 58-61.]  Before the Covid-19 pandemic and the resulting vehicle shortages, transactions where vehicles sold for list price were excluded to avoid incorporating transactions from no-haggle dealerships to which no PSAs would be applied.  [Filing No. 93-7 at 60-65.]  J.D. Power now excludes only transactions from known no-haggle dealerships and otherwise incorporates transactions where cars sell for list price.  [Filing No. 93-7 at 38-39; Filing No. 93-7 at 92.]  The transactions selling at list price constituted 30% of the transactions in the PIN data in the Spring of 2020 and over 33% of the transactions in the Fall of 2020 and the Spring of 2021.  [Filing No. 93-5 at 4.]

J.D. Power also does not account for transactions involving a military, employee, or family discount, a discount for financing through the dealership, or other reasons that a sold price might be less than the list price that are unrelated to a vehicle's market value.  [Filing No. 93-7 at 74-76.] Instead, J.D. Power uses the premise that any difference between the list and sold prices is the product of negotiation, but has not attempted to determine whether other factors may explain the difference.  [Filing No. 93-7 at 75-76.]

### 3.    *Using the PSA To Determine ACV*

The price that results after deducting the PSA from the list price of comparable vehicles is then further adjusted based on observed and documented differences between the insured's vehicle and the comparable vehicles, such as mileage and equipment.  [Filing No. 93-4 at 143-44.]  The

resulting  prices of comparable vehicles (after deducting the PSA and amounts for mileage and equipment differences from the insured vehicle) are then averaged to find the insured vehicle's base market value.  [Filing No. 93-4 at 145-46.]  Then, Mitchell adjusts the base market value based on the insured vehicle itself for characteristics such as whether the insured vehicle was in below- or above-average condition.  [Filing No. 93-4 at 146.]  This results in the insured vehicle's adjusted market value and, after taxes, fees, and any deductible are applied, the claim payment amount is reached.  [Filing No. 93-2 at 74; Filing No. 93-2 at 177.]

       4.    *Market Realities*

Prior to internet advertising and sophisticated pricing tools, the "sticker price" of vehicles was not a reliable indication of the sale price because consumers could not easily compare listed prices across numerous dealerships.  [Filing No. 93-6 at 3.]  Now, consumers can readily identify the amount at which comparable vehicles are listed in the market and if dealership prices are above the market rate, consumers will buy their vehicles at dealerships that price their vehicles to market.  [Filing No. 93-6 at 3-5.]  There are reasons unrelated to ACV, however, for why vehicles may sell for more or less than the listed price, including: (1) the dealership is getting points on a loan; (2) there is a special discount for miliary, employees, friends and family, etc.; (3) a consumer is able to apply a "credit" earned through using the dealership's service department; or (4) the consumer had an attractive trade-in vehicle that incentivized the dealership to sell at a below-market price so that it could obtain the trade-in vehicle.  [Filing No. 93-6 at 7-9.]

Progressive's expert, Dr. Jonathan Walker, analyzed 1,063 transactions in which both list prices and sold prices were available.  [Filing No. 109-5 at 36.]  For each transaction, Dr. Walker compared the PSA to the actual difference between the list price and the sold price and determined that, on average, the sold price projected by the PSA was within 1% of the vehicle's actual sold

price.  [Filing No. 109-5 at 36.]  He also determined that for 34% of those vehicles, the "PSA understated the actual discount off list," in some cases by as much as $3,013.  [Filing No. 109-5 at 36 (emphasis omitted).]  Progressive's other expert, Marc Spizzirri, determined through market research that in a sample of more than 600 used car dealers, more than 75% were willing to negotiate the price of a used car.  [Filing No. 108-16 at 18-20.]  Plaintiffs' expert, Dr. Michelle Lacey, acknowledged that "[i]t's possible" that "a particular person benefited from" application of the PSA as it could project that a vehicle sold for more than it actually did.  [Filing No. 109-6 at 4.]

###### 5.   *Appraisal Standards*

Progressive essentially uses a line-item method to arrive at the ACV of damaged vehicles, using the list price of comparable vehicles and making line-item adjustments for differences between the comparable vehicles and the damaged vehicle – such as mileage, equipment, and condition.  [Filing No. 96-9 at 2-4.]  But Progressive deviates from appraisal standards by applying the PSA because the PSA is not based on observed, verified data.  [Filing No. 96-9 at 4-7.]  While Plaintiffs' expert, Jason Merritt, contends that using the Mitchell methodology but not deducting the PSA is a sound way to determine ACV, he also agrees that there are other sound ways, including using guidebooks like the National Automobile Dealers Association Guide ("NADA") and the Kelley BlueBook ("KBB").  [Filing No. 96-9 at 8-10; Filing No. 108-21 at 4-5.]

### C.   Ms. Schroeder's Claim Under the Policy

On February 19, 2019, Ms. Schroeder totaled her 2018 Toyota Corolla.  [Filing No. 1-2; Filing No. 59 at 5.]  She submitted a claim under the Policy and Progressive paid $14,291.69 to her lienholder.  [Filing No. 108-1.]  Progressive arrived at the value of Ms. Schroeder's vehicle based on WCTL's analysis of thirteen comparable vehicles that either recently sold or were listed

for sale in the geographical area.  [Filing No. 1-2 at 5.]  WCTL adjusted the prices of the comparable vehicles to account for ways in which they differed from Ms. Schroeder's vehicle, such as in mileage and equipment.  [*See* Filing No. 109-2 at 4; Filing No. 109-4 at 33.]  Since some of the comparable vehicles were listed for sale but not yet sold, WCTL applied an individual PSA to each of those vehicles to estimate what they would sell for.  [*See* Filing No. 109-4 at 33.]  Ms. Schroeder testified in her deposition that she believed her settlement was too low, in part because it did not properly account for some of the features her vehicle had.  [Filing No. 108-6 at 4.]

### D.   The Lawsuit

Ms. Schroeder and Ms. Tanner initiated this litigation on May 13, 2022, [Filing No. 1], and filed the operative Second Amended Class Action Complaint on April 17, 2023, [Filing No. 59]. They allege claims on behalf of themselves and a putative class for breach of contract and breach of the covenant of good faith and fair dealing.  [Filing No. 59 at 15-22.]  In their Statement of Claims, they clarify that Ms. Schroeder brings her claims both individually and on behalf of a class, but Ms. Tanner brings only individual claims.  [Filing No. 128 at 3-7.]

Only Ms. Schroeder has filed a Motion for Class Certification, seeking certification of the following class as against Progressive:

> All persons who made a first-party claim on a policy of insurance issued by [Progressive] to a[n] Indiana resident who, from the earliest allowable time through the date an order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a vehicle valuation report prepared by Mitchell and the ACV was decreased based upon [PSAs] to the comparable vehicle used to determine ACV.

[Filing No. 59 at 13; Filing No. 92.]

# III.
## DISCUSSION

Ms. Schroeder argues that her class meets the requirements of Rule 23(a) and (b)(3) and also that it is ascertainable – a threshold requirement for class certification.  The Court begins with ascertainability and then considers the Rule 23 requirements.

### A.       Ascertainability of the Class

In support of her Motion for Class Certification, Ms. Schroeder argues that her proposed class "is based on specific, tangible facts, and, thus, is neither vague nor imprecise."  [Filing No. 94 at 12.]  She contends that "[e]very criterion for membership [in the class] – insured by Progressive, date of loss, whether it was a covered total-loss claim, whether it was based on a Mitchell Report, and whether a PSA was applied – is objective, not subjective criteria such as state of mind."  [Filing No. 94 at 12.]  Ms. Schroeder argues that the class is not a "failsafe class," because membership does not depend on whether the class member "wins or loses on the merits," and that ascertainability is not defeated simply because each individual's claim file would need to be reviewed to determine whether they are included in the class.  [Filing No. 94 at 12.]

Progressive argues in its response that the class is not ascertainable because identifying class members "would require resolving labor-intensive individualized questions."  [Filing No. 109 at 34.]  It asserts that Ms. Schroeder does not propose a method to determine which insureds are excluded from the class or lack standing due to "payment based on a different type of report; no payment due to withdrawal or coverage denial; negotiations; concessions; waiver of a deductible or condition adjustment greater than the PSA; lack of ownership, including through a lease, repossession, abandonment, or bankruptcy; or payments made by GAP insurers."  [Filing No. 109 at 34.]  Progressive notes that Ms. Schroeder's expert opined that class members cannot

be identified "by looking only at the data in Progressive's claim system and individual WCTL valuation reports." [Filing No. 109 at 35.]

In her reply, Ms. Schroeder argues that a class is ascertainable where the measure of damages is common but damages have to be calculated individually, "so long as the defendant is given a fair opportunity to challenge the claims to class membership and to contest the amount owed each claimant during the claims administration process," [Filing No. 120 at 19 (quotation and citation omitted).] She contends that Progressive's review of a sample of 150 claims revealed that only 3.3% were not based on the Mitchell Report but rather on concessions or negotiations. [Filing No. 120 at 19.] Ms. Schroeder asserts that the Seventh Circuit Court of Appeals found that a class was ascertainable in a case where the defendant had no way to determine whether someone was a class member based on its records and that, since Progressive has all of the information to make that determination, class treatment is "*a fortiori* appropriate here." [Filing No. 120 at 19.]

In addition to the class certification prerequisites specifically enumerated in Rule 23 and set forth above, it is Ms. Schroeder's burden to prove "that the class is indeed identifiable as a class," meaning that the class must be definite enough that the class can be ascertained. *Oshana, 472 F.3d at 513* (citations omitted). To establish that a class is ascertainable, the party seeking certification must propose a class definition that is: (1) precise; (2) defined by objective criteria; and (3) not defined in terms of success on the merits. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659-60 (7th Cir. 2015).

Progressive essentially argues that because the proposed class could contain individuals who were not damaged, the class is not readily ascertainable. Although the Seventh Circuit Court of Appeals has instructed that a class should not be certified if "it sweeps within it persons who could not have been injured by the defendant's conduct…[or] if it is apparent that it contains a

great many persons who have suffered no injury at the hands of the defendant," *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009), it has also acknowledged that "a class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable," *id.*, since "a class can be certified yet fail to prove its case on the merits," *Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 864 (7th Cir. 2018).  It has further noted that "[t]here is no precise tipping point at which a class includes too many people who have not been harmed," *id.*, and that "[s]uch determinations are a matter of degree, and will turn on the facts as they appear from case to case," *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).

Here, Progressive's review of 150 files of putative class members reflected that a PSA was applied in 145 of those 150 ACV determinations.  [Filing No. 108-24 at 4.]  That 3.3% of those putative class members may not actually be part of the class does not tip the class into the realm of unascertainable.  Further, to the extent that Progressive argues that its records would make it difficult to ascertain the class, the Court agrees with other courts who have considered certification of similar classes of Progressive policyholders and have found that "Progressive's own recordkeeping choices might increase [its] own burden in discovery, but that is no reason to deny class certification." *Volino v. Progressive Cas. Ins. Co.*, 2023 WL 2532836, at *10 n.1 (S.D. N.Y. Mar. 16, 2023) ("Ascertainability is not a freestanding administrative feasibility requirement.") (quotation and citation omitted).  The Court finds that Ms. Schroeder's class is ascertainable because her class definition is precise, defined by objective criteria, and not defined in terms of success on the merits.

**B.** **Rule 23(a) Requirements**

*1.* *Numerosity*

In support of her Motion for Class Certification, Ms. Schroeder argues that the numerosity requirement of Rule 23(a) is satisfied because "Progressive produced claims data for the putative Class showing there are over 50,000 members of the Class." [Filing No. 94 at 23.]

Progressive does not address numerosity in its response brief. [*See* Filing No. 109.]

Rule 23(a)(1) requires that, in order for a class to be certified, it must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[T]here is no magic number that applies to every case, [but] a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). While "mere speculation" and "conclusory allegations" regarding the class size will not support a finding that joinder of members would be impracticable, *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008), "[a] court must rely on simple common sense when determining whether a class size meets the numerosity requirement," *Hizer v. Pulaski Cnty., Ind.*, 2017 WL 3977004, at *4 (N.D. Ind. Sept. 11, 2017).

Here, Ms. Schroeder claims that there are over 50,000 members of the Class, and Progressive does not dispute that assertion. Accordingly, Progressive has waived any opposition to Ms. Schroeder's argument that the class is so numerous that joinder would be impracticable. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver."); *see also United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation, [which is] designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.").

- 12 -

In any event, the Court finds that a putative class size of over 50,000 easily meets the numerosity requirement of Rule 23(a).

### 2.    Commonality

Ms. Schroeder argues in support of her Motion for Class Certification that her breach of contract claim is subject to common evidence and turns on two questions: "(1) whether the PSA deduction is baseless and invalid, considering the data ignored and discarded from the calculation and evidence about dealer pricing practices in the modern used car market, and (2) whether under the standard appraisal 'comp' method, the invalid PSA deduction must be excised from insureds' valuation reports to arrive at a proper ACV amount." [Filing No. 94 at 14.] She notes that all class members had policies with the same language and that Progressive used the same business practices in adjusting their claims. [Filing No. 94 at 14.] Ms. Schroeder contends that the breach element of the breach of contract claim is subject to common proof, including: "(i) the form Policy language applicable to every Class member, which establishes the relevant duty; (ii) expert testimony that dealerships price to market and therefore the list price of comparable vehicles is reflective of cash market value, as reflected by even Progressive's own purposely truncated market data and by the DMV data; and (iii) expert testimony that the PSA is unjustified, arbitrary, capricious, and not reflective of the used car market." [Filing No. 94 at 15.] As for her breach of the covenant of good faith and fair dealing claim, Ms. Schroeder argues that many of the same common issues related to the breach of contract claim will demonstrate Progressive's "lack of good faith." [Filing No. 94 at 16-17.]

In its response, Progressive argues that Ms. Schroeder "cannot prove in a single stroke that every PSA adjustment for every comparable vehicle used in valuing every class member's car was improper or invalid" because her own experts have testified that dealerships vary in how they price

vehicles, some dealers negotiate prices, vehicles frequently sell for less than list price, and it is appropriate to adjust list prices to account for the difference between an advertised price and the sale price. [Filing No. 109 at 17-18.] It asserts that in order to determine whether a particular PSA was based on "flawed" data, each class member's individualized circumstances would need to be considered. [Filing No. 109 at 18-19.] Progressive argues that even if ACV could be calculated by adding the PSA that was originally deducted back into the WCTL valuation, as Ms. Schroeder suggests, there are numerous other valid ways of estimating ACV and "because Progressive did not promise to use any particular method, all of those methods are relevant to determine whether Progressive breached its obligation to pay ACV." [Filing No. 109 at 19.] Progressive also criticizes Mr. Merritt's expert testimony, noting that he admitted that he does not have any familiarity with WCTL, does not know how the PSA is calculated, and did not attempt to verify whether Mitchell Reports otherwise reflect an accurate estimate of ACV. [Filing No. 109 at 19-20.] It argues that neither the Policy nor Indiana law requires Progressive to comply with any particular appraisal standards. [Filing No. 109 at 20.]

In her reply, Ms. Schroeder identifies several cases from other districts in which the court certified class actions against Progressive challenging the PSA. [Filing No. 120 at 3-4.] Ms. Schroeder again points to evidence that she contends can be used to prove all of the class members' claims. [Filing No. 120 at 4-6.]

Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The plaintiff must show that there is a "common contention" that is "capable of class wide resolution" because "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Progressive's main argument is that it only breached the Policy if it

ultimately paid less than ACV, and that determining whether that occurred would require a review of each insured's circumstances and the payment that they received. But instead, this case "turns generally on whether Progressive's use of PSAs violated its contractual obligation to pay the proposed class members the ACV of their vehicles," and the common answer "is quite clear: the use of PSAs either did or did not violate the contract." *Drummond v. Progressive Specialty Ins. Co.*, 2023 WL 5181596, at *9 (E.D. Pa. Aug. 11, 2023). As the *Drummond* court explained:

> The legitimacy of PSAs as a means of calculating ACV is in turn a question common to the class. And while the court acknowledges that the class members might not have identical claims sharing identical facts, that is not enough to defeat commonality. Rather, the proposed class satisfies Rule 23(a)(2) so long as the putative plaintiffs demonstrate that all class members have been subjected to the same harm. Here, all potential class members have received compensation from Progressive calculated in part through the application of PSAs. Class-wide litigation could therefore generate common answers about whether Progressive breached its contract with the proposed class members.

*Id.* (quotations and citations omitted); *see also Brown v. Progressive Mountain Ins. Co.*, 2023 WL 7219499, at *4 (N.D. Ga. Aug. 3, 2023) (finding that the commonality requirement of Rule 23(a) was met and stating that "Progressive argues that the common question is not whether application of the PSA is valid, but rather whether each putative class member was paid the actual cash value for his total-loss claim. Nevertheless, if the application of the PSA is found to be generally violative of Progressive's form policy, it would necessarily be based on a finding that application of the PSA results in a payment different from the actual cash value of the totaled vehicle…. Here, the determination of whether the PSA was inaccurate and invalid constitutes a common answer to the class's common question."); *Volino*, 2023 WL 2532836, at *9 (finding that plaintiff had set forth common issues and stating that "Progressive argues that valuing a car is an individualized, vehicle-specific task, involving numerous factors. Progressive also argues, and Plaintiffs agree, that there are many acceptable valuation methodologies, none of which necessarily is compelled

by the Progressive Policies.  But that would equally be true if any individual class member tried to use this or any other method of proof in an individual contract action.  Progressive is free to dispute Plaintiffs' proof of 'actual cash value' when it is asserted on behalf of tens of thousands of insureds just as when it is asserted for only one….  The fact that the jury might not be persuaded by Plaintiffs' common proof does not mean Plaintiffs lack common proof").

The issue Ms. Schroeder presents in this case – whether using the PSA to determine ACV violates the Policy – is common to all class members.  The Court finds Ms. Schroeder has satisfied the commonality requirement of Rule 23(a).

        *3.*    *Typicality*

Ms. Schroeder argues that her claims are typical of the class because Progressive's practices are uniform, the class members' policies included identical language, and Progressive applied a PSA to the listed price of comparable vehicles for every class member.  [Filing No. 94 at 23-24.]

Progressive argues in its response that Ms. Schroeder does not satisfy the typicality requirement because she was adequately paid; "Progressive's payment did not fully account for storage fees, which accrued to [her] benefit in an amount of over $100"; and "Progressive had already paid [her] $1,749.23 for damage to her vehicle, which she had not repaired, yet Progressive deducted only $1,244.56 for that damage when valuing the vehicle[,] yielding a benefit exceeding $500 to [her]." [Filing No. 109 at 32.]  It asserts that "even if [Ms. Schroeder's] theory about the PSA were right…, the facts show that Progressive still paid [her] an adequate amount." [Filing No. 109 at 32.]

In her reply, Ms. Schroeder argues that Progressive "did not provide any citations, nor any testimony that there is a dollar-to-dollar correlation between the cost to repair damage and the effect of such damage on the overall vehicle value," and that her damages are "approximately

$600.00, plus hundreds of dollars in prejudgment interest." [Filing No. 120 at 17.]  She asserts that Progressive's argument "would merely reduce the total damages to which [she] is entitled." [Filing No. 120 at 17.]

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality requires that Ms. Schroeder's claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and [are] based on the same legal theory." Lacy, 897 F.3d at 866.  Typicality and commonality are interrelated and "tend to merge." Gen. Tel. Co. of Sw., 457 U.S. at 157 n.13.  Consequently, they "often rise or fall together." Howard v. Cook Cnty. Sheriff's Off., 989 F.3d 587, 598 (7th Cir. 2021).

Ms. Schroeder alleges that she and the putative class members were damaged because Progressive determined the ACV of their vehicles by using a PSA.  The Court rejects Progressive's argument that Ms. Schroeder's claims are not typical because Progressive adequately paid her and actually may have overpaid her.  "The potential for slight factual differences does not defeat typicality." Volino, 2023 WL 2532836, at *6 (rejecting Progressive's arguments that the named plaintiff's claims were not typical of the class's claims because it may have overpaid one named plaintiff and another named plaintiff negotiated a higher payout with Progressive).  The class members' policies contained identical form language, Progressive used uniform practices in adjusting their total-loss claims by applying a PSA when determining ACV, and Ms. Schroeder suffered a total-loss claim to which Progressive applied a PSA in determining ACV.  She has satisfied Rule 23(a)'s typicality requirement.

4. *Adequacy of Representation*

In support of her Motion for Class Certification, Ms. Schroeder argues that she "possesses personal interests in the outcome of this case, has presented no claims that would be detrimental to the Class's interests, and all Class members would benefit from a finding that the PSA is improper and constitutes a breach." [Filing No. 94 at 24.]  Additionally, she asserts that she has retained qualified counsel with experience in litigating class action cases.  [Filing No. 94 at 24-25.]

Progressive argues in its response that Ms. Schroeder is an inadequate class representative because she "has chosen to jeopardize the rights of putative class members by focusing exclusively on the PSA and accepting all other parts of the WCTL methodology," "[m]any putative class members will be unable to show that the PSAs in their report were inaccurate and thus will lose on their contract claims as styled by Plaintiff," and "[h]ad Progressive abided by Plaintiff's no-PSA rule and used a different…methodology, such as NADA or KBB, a portion of the class could have been paid less." [Filing No. 109 at 33-34.]

In her reply, Ms. Schroeder argues that if she prevails on her theory of liability, "the ACV amount for all class members will be higher, meaning all will benefit and none will be harmed." [Filing No. 120 at 16-17.]  As to Progressive's argument that Ms. Schroeder does not contest other elements of Progressive's vehicle valuation, Ms. Schroeder asserts that Progressive "offers no evidence concerning whether any such other claim would be meritorious, whether res judicata would attach, or other analysis." [Filing No. 120 at 17 (emphasis omitted).]

Under Rule 23(a)(4), Ms. Schroeder must show that she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  She must be a member of the class and must "possess the same interest and suffer the same injury" as the other class members. *Dukes*, 564

U.S. at 348-49 (quotation and citation omitted).  While Ms. Schroeder has chosen to contest only the PSA aspect of the WCTL methodology, the Court notes that she is proceeding under Rule 23(b)(3), so putative class members may opt out of the class.  *See* Fed. R. Civ. P. 23(c)(2)(B)(v). Any class member wishing to pursue other perceived shortcomings in Progressive's ACV calculation are free to opt out of the class and, if not, Ms. Schroeder will adequately represent them.  *See Drummond*, 2023 WL 5181596, at *9 (rejecting identical argument by Progressive and noting that courts have found that the ability to opt out of the class under Rule 23(b)(3) is "instrumental in finding adequacy"); *Volino*, 2023 WL 2532836, at *7 (finding that named plaintiffs would adequately represent the interests of the class even though they only challenged the PSA aspect of Progressive's valuation).

Further, the possibility that some class members would have received less if Progressive had used the NADA or KBB value instead of applying a PSA does not render Ms. Schroeder an inadequate class representative.  If she is able to show that using a PSA was a breach of the Policy, all class members would receive more.  *See Brown*, 2023 WL 7219499, at *5 ("The fact that under other methodologies certain class members would have received even less than they did does not render irrelevant the fact that the PSA certainly resulted in a reduction.  Should the application of the PSA be found to be improper, all putative class members would benefit.").  The Court finds that Ms. Schroeder is an adequate class representative.

As for adequacy of counsel, Progressive does not argue that Ms. Schroeder's counsel is inadequate and so has waived any argument to that effect.  *Bonte*, 624 F.3d at 466.  In any event, the Court finds that Ms. Schroeder's counsel has extensive experience litigating these types of cases and that they will adequately represent the class.  Ms. Schroeder has satisfied Rule 23(a)(4)'s adequacy of representation requirement.

C.      Rule 23(b)(3) Requirements

Having found that Ms. Schroeder has satisfied the requirements of Rule 23(a), the Court next considers whether she has satisfied one of the three categories set forth in Rule 23(b).

In support of her Motion for Class Certification, Ms. Schroeder argues that common issues related to damages predominate over individualized ones. [Filing No. 94 at 18-23.] She asserts that the measure of damages is the amount of the PSA deduction, calculated as the total amount of the PSA deductions, divided by the number of comparable vehicles utilized, plus prejudgment interest. [Filing No. 94 at 18.] Ms. Schroeder relies on numerous cases in which courts certified a class that was challenging "a single line-item deduction," and contends that class treatment is proper "even where insurers attempt to argue there may have been an overpayment as to an unchallenged aspect of the ACV calculation." [Filing No. 94 at 20-21 (emphasis omitted).] She asserts that class treatment is superior here because the amount of damages for each class member will be "relatively small…compared to the cost of litigating against a large insurance company." [Filing No. 94 at 25.] She also argues that class treatment is manageable because liability will be established through common evidence and "identifying Class members is formulaic and based on objective, verifiable data in Progressive's records." [Filing No. 94 at 26.]

Progressive asserts in its response that the main issue is whether it paid each insured less than ACV, and that this issue is individualized and predominates over all others. [Filing No. 109 at 22-31.] Progressive takes issue with Ms. Schroeder's argument that her expert will testify that the way to calculate ACV is to use the Mitchell Report without deducting the PSA. [Filing No. 109 at 23.] It reiterates its argument that applying a PSA did not necessarily result in underpayment "because other parts of the valuation overvalued the vehicle." [Filing No. 109 at 24-25.] Progressive also argues that determining damages for any injured class member requires

- 20 -

individualized inquiries.  [Filing No. 109 at 31-32.]  It asserts that class treatment is not superior because mini-trials would be needed to adjudicate each class member's claim and that class members can take advantage of informal negotiation and dispute resolution to settle any issues they have with the ACV of their vehicle.  [Filing No. 109 at 34.]  It also contends that any class would be unmanageable and that Ms. Schroeder "proposes no method for identifying which insureds are excluded from the class or lack standing due to reasons such as payment based on a different type of report; no payment due to withdrawal or coverage denial; negotiations; concessions; waiver of a deductible or condition adjustment greater than the PSA; lack of ownership, including through a lease, repossession, abandonment, or bankruptcy; or payments made by GAP insurers."  [Filing No. 109 at 34.]

In her reply, Ms. Schroeder asserts that Progressive "[c]ollaps[es] the breach and damages elements of [her] claim," and that "[t]here is simply no question [that she] will present common evidence that Progressive did not consider actual market value, but rather an artificial, downwardly skewed, and deflated 'market' of its own invention, in breach of its contractual duty."  [Filing No. 120 at 6-7.]  She argues that Progressive "continu[es] to ignore its duty to determine ACV based on 'market value' and to conflate liability with damages," and that neither NADA or KBB provide the market value of a vehicle, so they are not proper sources for determining ACV.  [Filing No. 120 at 9.]  She contends that all class members have a redressable injury, including those that owe the entire payment to a lienholder or other creditor.  [Filing No. 120 at 12-13.]  Finally, Ms. Schroeder attempts to distinguish cases relied upon by Progressive in which the plaintiffs challenged the way that condition adjustments were disclosed or claimed that the entire Mitchell methodology violated a state statute.  [Filing No. 120 at 14-16.]  Ms. Schroeder argues that individuals can still pursue appraisal or dispute resolution – then they will not be part of the class.

[Filing No. 120 at 18.]  She argues further that class treatment is "more manageable than thousands

of cases."  [Filing No. 120 at 19.]

Ms. Schroeder asserts that this case satisfies Rule 23(b)(3), which provides that class

certification is appropriate if:

> the court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and that a class
> action is superior to other available methods for fairly and efficiently adjudicating
> the controversy.  The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun
> by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Therefore, Rule 23(b)(3) imposes two additional requirements for class

certification: (1) class-wide factual or legal issues must predominate over individual issues, and

(2) the class action mechanism must provide a superior method for adjudication.

### 1.   Predominance

Predominance "tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation."  Butler v. Sears, Roebuck & Co., 727 F.3d 796, 803 (7th Cir.

2013).  The Court has already found that Ms. Schroeder has presented a common question –

whether the use of a PSA to determine ACV violates the Policy.  The Court acknowledges that

there are differences in the circumstances of each class member's claims under their policy – they

have different vehicles, each a different age with different mileage and features.  This might prove

to be a problem if the common issue Ms. Schroeder had identified was whether Progressive paid

- 22 -

ACV to putative class members.  But instead, the common issue here is whether Progressive's use of PSAs to determine ACV violated the Policy.[3]  This issue predominates over this litigation and any individualized issues that exist.  *See, e.g., Drummond*, 2023 WL 5181596, at *10-11 (finding that common issue of whether use of PSA violated Progressive policy predominated over individualized issues and rejecting Progressive's arguments regarding the need for individualized inquiries in order to show that each class member suffered an injury-in-fact and in order to calculate damages).[4]

---

[3] The Court recognizes that some courts have denied class certification in cases brought against Progressive related to the use of PSAs.  *See, e.g., Kroeger v. Progressive Univ. Ins. Co.*, 2023 WL 9059523 (S.D. Iowa Nov. 20, 2023); *Williams v. Progressive Cnty. Mut. Ins. Co.*, 2020 WL 7078888 (S.D. Cal. Dec. 3, 2020); *Curtis v. Progressive Northern Ins. Co.*, 2020 WL 2461482 (W.D. Ok. May 12, 2020).  The Court respectfully disagrees with the reasoning set forth in those cases, which are not binding on this Court in any event.

[4] Progressive relies on several cases to argue that individualized issues regarding valuing the putative class members' property (including vehicles, hail-damaged roofs, and real estate) preclude class certification.  [Filing No. 109 at 20-21.]  But those cases are inapposite.  *See, e.g., Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2014) (plaintiffs had purchased homeowners insurance from defendant, alleged that defendant did not adequately pay for hail damage under their policies, and sought injunctive relief.  Court affirmed denial of motion for class certification to the extent that plaintiff proceeded under Rule 23(b)(2) because proper remedy was monetary damages and did not consider on appeal whether denial of motion for class certification under Rule 23(b)(3) was proper); *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134 (9th Cir. 2022) (plaintiffs challenged defendant's valuation report as a whole under state laws requiring certain disclosures to insureds, and success on claims would require each class member to show that they received less than ACV); *Ngethpharat v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 1404526 (W.D. Wash. May 4, 2022) (challenging same regulation as in *Lara* and admitting that plaintiffs did not intend to show that they received less than ACV but rather relying on regulatory violation to show damage); *Richardson v. Progressive Am. Ins. Co.*, 2022 WL 154426 (M.D. Fla. Jan. 18, 2022) (challenging Mitchell Report because it did not match NADA valuations, but not showing that NADA valuations equated to ACV); *Curtis v. Progressive N. Ins. Co.*, 2020 WL 2461482 (W.D. Ok. May 12, 2020) (same claims and outcome as *Richardson*).  These cases and others relied upon by Progressive – most of which are not binding on this Court in any event – all arose in other contexts and differ significantly from this one, where Ms. Schroeder claims that the Mitchell Report provides a fair valuation of ACV, but the subtraction of a PSA renders it unfair and breaches the terms of the Policy.

2.      *Superiority*

Class actions are superior to individual lawsuits where the damages each class member seeks are small in relation to the cost of pursuing an individual lawsuit.  *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014).  The Court finds that a class action is superior to individual lawsuits here due to the large number of potential plaintiffs, the relatively small amount of damages at issue for each plaintiff, and the easy management of the class in this case.

In short, in addition to satisfying the prerequisites under Rule 23(a), Ms. Schroeder has also satisfied the requirements of Rule 23(b)(3), making class certification appropriate.

## IV.
### CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS** Progressive's Motion for Leave to File Supplemental Authority, [122], and Ms. Schroeder's Motion for Leave to File Supplemental Authority, [127];

- **GRANTS** Ms. Schroeder's Motion for Class Certification, [92], and **CERTIFIES** the following class:

  > All persons who made a first-party claim on a policy of insurance issued by Progressive Paloverde Insurance Company to an Indiana resident who, from the earliest allowable time through the date an order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a vehicle valuation report prepared by Mitchell and the ACV was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine ACV.

  The Court appoints Ms. Schroeder's current attorneys as class counsel;

- **DENIES** Ms. Schroeder's second Motion for Class Certification, [96], as duplicative; and

- **DENIES** Defendants' Motion for Oral Argument on Plaintiff's Motion for Class Certification, [111].

- 24 -

Neither party addresses what the "earliest allowable time" referenced in the class definition is in their briefs related to the Motion for Class Certification.  The Court **ORDERS** the parties to meet and confer to determine what the "earliest allowable time" referenced in the class definition should be based on the applicable statute of limitations.  Ms. Schroeder is **ORDERED** to file a Motion for Approval of Class Notice, with the proposed Notice attached, by **February 26, 2024**.  Any disagreements regarding the "earliest allowable time" will be decided in connection with Ms. Schroeder's Motion for Approval of Class Notice.

Date: 1/26/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

- 25 -