UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HEATHER SCHROEDER and MISTY TANNER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PROGRESSIVE PALOVERDE INSURANCE COMPANY and PROGRESSIVE SOUTHEASTERN INSURANCE CO., an Ohio corporation,<br><br>Defendants. | Civil Action: 1:22-cv-00946-JMS-MKK |

**PLAINTIFF'S OPPOSED MOTION TO MODIFY
CLASS DEFINITION AND APPROVE CLASS NOTICE**

Plaintiff Heather Schroeder, by and through the undersigned counsel, and pursuant to the Court's Order granting class certification (Dkt. No. 131, "Order"), hereby give notice that they have met and conferred with Progressive regarding the "earliest allowable time" to begin the Class period, and respectfully request that the Court approve the following plan for disseminating notice to the certified Class and modify the certified Class definition.

**I.     LEGAL STANDARD**

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (individual notice must be given to "class members whose names and addresses may be ascertained through reasonable effort"). Further, the notice

1

must communicate Rule 23(c)(2)(b)(i-vii)'s requirements in clear, concise, and plain language that is easy to understand. *Id*. Finally, subject to the requirement that notice be the best "practicable," the Court has "complete discretion as to how the notice should be given." 7B Charles A. Wright et al., Federal Practice and Procedure §1797.6 at 200 (3d ed. 2005); *see also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988) ("Rule 23… accords considerable discretion to a district court in fashioning notice to a class."); *Tylka v. Gerber Products Co.*, 182 F.R.D. 573, 578 (N.D. Ill. 1998) (holding same).

## II. THE CLASS DEFINITION SHOULD BE MODIFIED

The class definition that Plaintiff Schroeder moved to certify and that the parties fully briefed is different than the class definition pleaded in the Second Amended Complaint. Plaintiff apologizes for causing confusion and respectfully requests the Court amend the Class Definition to track the definition Plaintiff intended to certify, which was defined in Exhibit 13 to the Motion for Class Certification:

> All persons who made a first-party claim on a policy of insurance issued by Progressive Paloverde Insurance Company to an Indiana resident where the claim was submitted from May 13, 2012, through the date an order granting class certification is entered, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

ECF No. 96-13.

> The Court's Order certified a slightly different class definition, defined as:

> All persons who made a first-party claim on a policy of insurance issued by Progressive Paloverde Insurance Company to an Indiana resident who, from the earliest allowable time through the date an order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a vehicle valuation report prepared by Mitchell and the ACV was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine ACV.

ECF No. 131 at 24.

2

It appears that, instead of the class defined in Plaintiff's Motion for Class Certification, the Court may have certified the preliminary class definition from the pleadings *Compare* ECF No. 93-13. Plaintiff acknowledges the definition she proposed with her certification motion was difficult to find and respectfully requests that the Court exercise its inherent authority to modify the Class definition to match those of the certified classes in virtually identical cases pending against Progressive in other federal courts: *Brown v. Progressive Mountain Ins. Co.*, No. 3:21-CV-175-TCB, 2023 WL 7219499 (N.D. Ga. Aug. 3, 2023) and *Curran v. Progressive Direct Ins. Co.*, No. 22-CV-00878-NYW-MEH, 2023 WL 8715699 (D. Colo. Dec. 18, 2023). *See Pelletier v. Endo Int'lPLC*, 338 F.R.D. 446, 478 (E.D. Pa. 2021) ("Courts possess the authority to limit or modify class definitions in order to provide the precision needed for class certification") (internal quotation marks and citations omitted).

The class definition Plaintiff sought was proposed for the purpose of preventing Progressive from muddying the waters about who is a member of the class—which, as anticipated, Progressive is attempting to do by taking the position that insureds whose benefits Progressive paid to a lienholder did not "receive compensation" and lack standing to sue Progressive for breach of contract. The parties did not brief this issue because both understood Plaintiff was seeking certification of the revised definition.

Even were the issue briefed, Plaintiff's position is correct as a matter of law. The "standing" arguments Progressive has indicated to Plaintiff it will attempt to introduce in opposition to this Motion have been rejected by numerous courts, including *three courts* in other states that are overseeing *identical* class actions against Progressive. In *Brown*, a court in the Northern District of Georgia recently denied Progressive's motion for summary judgment in an identical case and rejected Progressive's standing argument that an insured "did not suffer a financial loss because

3

the funds went to her lienholder rather than herself" because that argument "flies in the face of clear law[.]" *Brown v. Progressive Mountain Ins. Co.*, No. 3:21-CV-175-TCB, 2024 WL 399479, at *5 (N.D. Ga. Feb. 1, 2024). The *Brown* court held that such an insured "certainly has standing to sue" and that "[t]he denial of the benefit of her bargain is what injures [the plaintiff], not the loss of the money itself." *Id.* In *Drummond*, a court in the Eastern District of Pennsylvania certified an identical class against Progressive and also rejected Progressive's standing argument, explaining that "the class members have been potentially 'denied the benefit of [their] bargain,' which constitutes an injury in fact." *Drummond*, 2023 WL 5181596, at *11.

In any event, contrary to Progressive's position, insureds whose benefits were paid to a third-party "received compensation" as the court in *Costello* readily determined. *Costello v. Mountain Laurel Assurance Co.*, No. 2:22-CV-35, 2024 WL 239849, at *13 (E.D. Tenn. Jan. 22, 2024) (report and recommendation). There, a magistrate judge in the Eastern District of Tennessee recently issued a Report and Recommendation that the district court grant Plaintiff's motion and certify an identical class and, there too, also rejected Progressive's arguments Progressive raises below. *Id.*, 2024 WL 239849, at *13. The *Costello* court found "instructive" Supreme Court precedent holding that standing exists even if a plaintiff owes what she recovers in damages to a third-party. *Id.* (citing *Tyler v. Hennepin County*, 598 U.S. 631, 637 (2023)). In *Tyler*, the county foreclosed on petitioner's condo to recover $15,000 owed in back taxes, the condo brought $40,000 at the foreclosure sale, and the county refused to remit the difference—because, among other reasons, plaintiff had a mortgage on the property and a lien for unpaid fees. *Id*. The county argued that because "potential encumbrances exceed the value of any interest Tyler has in the home above her $15,000 tax debt, [] she therefore ultimately suffered no financial harm from the sale of her home," and "[w]ithout such harm she would have no standing." *Id*. at 637. The Supreme Court

4

easily rejected that argument: "Even if there were encumbrances on the home worth more than the surplus, Tyler still plausibly alleges financial harm: The County has kept [money] that belongs to her." *Id*. Moreover, as with a foreclosure sale, Progressive cannot point to any law showing that the totaling of a vehicle "extinguishes the [insured's] debts. Instead, the borrower remains personally liable." *Id*. (internal citation omitted). And there, as is true for any Class Member with downstream obligations, had she received what she was owed, "she could have at the very least used it to reduce any such liability." *Id*. The *Costello* court also rejected Progressive's reliance on *Volino*, as it attempts to do here, finding that "the *Volino* court did not fully analyze the Article III standing of such class members because those insured were not members of the class as defined in *Volino*" and "[a]s such, it would be inappropriate for the Court to rely upon this dicta as to the issue of Article III standing." *Costello*, 2024 WL 239849, at 13.

Contrary to Progressive's previewed arguments, all first-party insureds "received compensation," regardless whether Progressive remitted that compensation in the form of cash payments directly in the insureds' pocket or in the form of paying down debts to a third-party on the insureds' behalf. This is not some exotic understanding of "compensation." In the employment context, for example, employers regularly compensate employees by matching contributions to retirement accounts or sharing the cost of health insurance or other benefits. The employee still "receives compensation" in those circumstances.

The same is true with insurance benefits. Where Progressive owed the insured money and remitted that money to pay down the insured's loan, the insured was still compensated, albeit insufficiently so, under the Policy. Frankly, this is a perfectly commonsense understanding of what it means to be "compensated." It would be absurd to suggest that if a person holds up their end of a bargain in exchange for a promised monetary amount, that they have not been "compensated" at

all if the money goes to paying down a debt. And if the debt is not paid down in the amount required by the contract, there is simply no question that the person possesses standing to sue for the full amount for which they bargained.

But there is no need to engage in these semantics. Plaintiff sought a revised class definition to avoid the confusion the imprecise "received compensation" language needlessly caused in *Volino*. The parties briefed class certification with the understanding that Plaintiff sought certification of the revised definition in Exhibit 13, such that it would be beyond semantic dispute that each policyholder whose valuation was reduced by a PSA would be a Class Member— regardless whether their benefits were paid directly to them or to a third-party. Therefore, Plaintiff respectfully requests the Court exercise its inherent authority and amend the Class Definition to match that in Exhibit 13 to Plaintiff's Motion for Class Certification. Plaintiff will gladly provide additional briefing on this issue if it would be helpful to the Court.

### III. PROPOSED NOTICE PLAN[1]

#### A. NOTICE DESIGN

Plaintiff proposes that a Short Form Notice in the form attached as **Exhibit 1** be sent by electronic mail to potential Class Members for whom Defendants possess a valid email address (the "Email Notice"). For potential Class Members for whom Defendants do not possess a valid email address, or where the Email Notice is returned as undeliverable, Plaintiff proposes to send the postcard notice attached as **Exhibit 2** by first-class mail (the "Postcard Notice"). Similar notice programs were recently approved in virtually identical cases against Progressive, including in *Curran v. Progressive Direct Insurance*, Case No. 1:22-cv-00878, ECF No. 95 (D. Colo. Jan. 10,

---

[1] Should the Court modify the Class Definition, Plaintiff will revise the Class Definition in the Notice documents accordingly.

2024); *Volino, et al. v. Progressive Casualty Insurance Company, et al.*, Case No. 1:21-cv-06243-LGS, slip op. (S.D.N.Y. May 1, 2023); and *Brown, et al. v. Progressive Mountain Ins. Co., et al.*, No. 3:21-cv-00175-TCB, ECF No. 114 (N.D. Ga. Aug. 30, 2023).

For the class notice administrator, Plaintiff proposes to use Epiq Systems, Inc. ("Epiq"), which has experience administering thousands of class actions involving a wide range of issues. *See* **Exhibit 3** (Declaration of Cameron R. Azari, Esq on Class Notice Plan ("Azari Declaration" or "Azari Decl.") at ¶¶ 3-4). As reflected in the Azari Declaration, it is common for Epiq to send a combination of email and/or postal notice mailings in class certification or settlement notice situations when this information is available for potential class members. *Id.* at ¶ 20.

Courts routinely approve direct, individual notice provided via email. *See, e.g.*, *Curran*, Case No. 1:22-cv-00878, ECF No. 95 (approving class notice to Progressive insureds by email pending resolution defendant's appeal); *Volino*, Case No. 1:21-cv-06243-LGS, slip op. (approving class notice to Progressive insureds by email); *Brown*, No. 3:21-cv-00175-TCB, ECF No. 114 (same); *Knox v. John Varvatos Enters.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017) ("Notice of class actions by email have now become commonplace."); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1261 (S.D. Fla. 2016) ("The email notice provided to more than 90% of the Class members…was the best practicable notice and was reasonably calculated to apprise them of their rights. Courts consistently approve notice programs where notice is provided primarily through email because email is an inexpensive and appropriate means of delivering notice to class members."); *Butler v. DirectSAT USA LLC.*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) ("[T]he use of email to notify potential plaintiffs of [] litigation communication…is [now] the norm.").

Courts also routinely find that postcard notice is a valid method for providing notice under Rule 23, especially when combined with other notice formats such as email notice and/or a case

specific website. *See Volino*, Case No. 1:21-cv-06243-LGS, slip op. (approving a postcard notice where email addresses were not available, or email notices were returned as undeliverable); *see also Wisconsin v. Indivior Inc. (In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.)*, No. 2445, 2021 U.S. Dist. LEXIS 231508, at *23 (E.D. Pa. Dec. 3, 2021) (approving "individual notice by email and direct mail[,] [i]f a potential class member does not have an identifiable, valid email address or if email notice is returned as undeliverable[.]"); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) (approving a postcard settlement notice that references a phone hotline and website with more information); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1375 (S.D. Fla. 2007) (approving a postcard notice referencing a phone hotline and website with more information).

To help ensure that members of the Class receive individual notice, Plaintiff proposes Email Notice with a follow-up Postcard Notice for any emails that are undeliverable. *See Volino*, Case No. 1:21-cv-06243-LGS, slip op. (approving class notice by email notice and by postcard notice where the email notice was returned as undeliverable); *Brown*, No. 3:21-cv-00175-TCB, slip op. (same); *Puddu v. 6d Global Techs.*, 15-cv-8061 (AJN), 2021 U.S. Dist. LEXIS 90819 (S.D.N.Y. May 12, 2021) (ordering notice primarily via email, with first-class notice provided to class members only if no email address is available). Moreover, the notice program will consist of a toll-free helpline and an informational website, as discussed more fully below.

### B. NOTICE PROCEDURES

Defendants will provide Plaintiff with a spreadsheet reflecting the named insured's last known address and email address for first-party total loss claims made by Indiana residents on an Indiana policy of insurance issued by Progressive Paloverde Insurance Company, where the claim

was submitted from the May 13, 2012[2] through January 26, 2024, and Progressive generated a Mitchell vehicle valuation report that used the comparable vehicle methodology.

For each presumptive Class Member for which Defendants' data reflects an email address, Epiq will send the Email Notice via email utilizing best practices to ensure the email is not caught in spam filters. Azari Decl. at ¶¶ 21-22. For each presumptive Class Member for whom Defendants' data does not reflect an email address, or for whom the Email Notice is returned as undeliverable, Epiq will send the Postcard Notice via first-class mail to the physical address provided by Defendants. *Id*. at ¶¶ 23-25. For those members to whom Postcard Notice will be sent, Epiq will process the addresses through the U.S. Postal Service's National Change of Address ("NCOA") database to obtain the most current mailing addresses for Class Members. *Id.* at ¶ 24. The NCOA database provides updated addresses for anyone who has filed a change of address notice with the U.S. Postal Service within the last four years. *Id.* at ¶ 24 n.3. Notices returned with a forwarding address from the U.S. Postal Service will be re-mailed to the new address. *Id.* at ¶ 25.

C. **TOLL-FREE HELPLINE**

Prior to the sending Notice to Class Members, Epiq will establish a toll-free helpline to assist presumptive Class Members seeking information about the case. *Id.* at ¶ 27. Plaintiff and Defendants will confer and agree on any scripts that are to be provided via the toll-free helpline. Class members can receive information directly from the helpline and can leave a message requesting a live-call-back. *See generally Belanger v. RoundPoint Mortg. Servicing Corp.*, 2018

---

[2] Pursuant to this Court's Order (ECF No. 131), the parties have met and conferred and determined the "earliest allowable time" to begin the Class period is ten years prior to the filing of this action, or May 13, 2012, based on the statute of limitations that applies to Plaintiff's breach of contract claim under Indiana law.

U.S. Dist. LEXIS 177676, at *10-11 (S.D. Fla. Sep. 28, 2018) (approving Notice plan with IVR phone line and not live operators).

D.  **INFORMATIONAL WEBSITE**

Prior to the mailing of the Notice, Epiq will coordinate and integrate into the Email Notice and Postcard Notice a URL for an informational website. Azari Decl. at ¶¶ 21, 23, 26. Plaintiff and Defendants will confer and agree on the URL name. The website will (1) provide presumptive Class Members with the Longform Notice in the form attached as **Exhibit 4** (the "Long Form Notice"); (2) will have a link for an opt-out form to be completed and mailed by the presumptive Class Member; and (3) will provide a link to the operative Complaint and Class Certification Order. *Id*. at ¶¶ 21, 26. The proposed opt-out form is attached as **Exhibit 5**. The form is not mandatory, meaning that presumptive Class Members can opt-out so long as they provide the case name, date, and their name, address, and signature. Plaintiff and Defendants will confer and agree on any materials that are posted to the informational website.

E.  **TIMING**

IV. **In light of the the Rule 23(f) petition currently pending with the Court of Appeals for the Seventh Circuit, the parties agree notice should not be sent until 30 days after the latest of the following dates: (1) Defendant's Rule 23(f) petition for review of class certification is denied; (2) if the petition is granted, the appeal is resolved; or (3) this Notice Plan is approved. that the parties agree the opt-out deadline should be set for forty-five (45) days after the date Notice is sent for members of the Class to opt-out. *See Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628, 634 (11th Cir. 2015) (approving 45-day deadline following Notice within which to opt-out, and noting that 30-60 days is the norm); *see e.g.*, *Volino*,**

Case No. 1:21-cv-06243-LGS, slip op.; *Brown*, No. 3:21-cv-00175-TCB, ECF No. 114.

## V. CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court modify the Class Definition and approve the proposed notice plan.

Dated: February 26, 2024

Respectfully submitted,

*/s/ Chris Gold*
Chris Gold (admitted *pro hac vice*)
EDELSBERG LAW, P.A.
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320
scott@edelsberglaw.com
chris@edelsberglaw.com

Jacob L. Phillips (admitted *pro hac vice*)
NORMAND PLLC
3165 McCrory Place, Suite 175
Orlando, FL 32803
Telephone: (407) 603-6031
jacob.phillips@normandpllc.com

Hank Bates (admitted *pro hac vice*)
Lee Lowther (admitted *pro hac vice*)
CARNEY BATES & PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR 72201
Telephone: 501-312-8500
hbates@cbplaw.com
llowther@cbplaw.com

Andrew J. Shamis (admitted *pro hac vice*)
Edwin E. Elliott (admitted *pro hac vice*)
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com

11

edwine@shamisgentile.com

12

## CERTIFICATE OF SERVICE

I certify that on February 26, 2024, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system, which will automatically send notice of such filing to all counsel of record.

*/s/ Chris Gold*
Chris Gold