**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| HEATHER SCHROEDER and MISTY TANNER, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>PROGRESSIVE PALOVERDE INSURANCE COMPANY and PROGRESSIVE SOUTHEASTERN INSURANCE CO., an Ohio corporation,<br><br>      Defendants. | Civil Action: 1:22-cv-00946-JMS-MKK |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO
MODIFY CLASS DEFINITION AND APPROVE CLASS NOTICE**

      Progressive has repeatedly and unsuccessfully tried to defeat class certification by arguing that insureds with downstream obligations, such as to a lienholder, for example, lack Article III standing because they did not "receive compensation" by pocketing the money, as they ultimately owed their total loss underpayment from Progressive to a third party. Progressive is wrong. Progressive's argument has absolutely no legal support and, in fact, has been rejected by three federal courts on these same facts.

      What Progressive is really arguing is that, because a claimant has downstream obligations, Progressive is allowed to underpay the benefit it owed these insureds under the Policy and pocket the difference. This makes no sense. The claimant paid Progressive premiums and owns the insurance claim. Downstream obligations are irrelevant to *Progressive's* obligations under the Policy. Just like any litigant who recovers in any lawsuit, these insureds can sort out any

downstream obligations they may have once the money hits their pockets -- just like those class members with downstream obligations did when they received their original (insufficient) payment, regardless what those downstream obligations may be (*e.g.*, lienholder, leasing company, rental company, etc.).

Despite the fact that Progressive's meritless argument has found no traction anywhere, Plaintiff sought to avoid the confusion Progressive is attempting to sow here, and to align the class definition with the legal conclusions of the courts that have rejected Progressive's argument, by moving to certify a clarified class definition that eliminated the "received compensation" language Progressive attempts to exploit. Plaintiff's modified definition eliminates Progressive's ability to argue that Progressive insureds who were underpaid under the Policy but owed a downstream obligation are excluded from the Class. This clarified definition has been certified by the *Brown* and *Curran* courts, and this is the definition Plaintiff moved to certify here.

Plaintiff, however, did a poor job of highlighting this modified class definition for the Court and, thus, now moves to modify the definition to align with the one proposed in Exhibit 13 to her motion for class certification. This Court has the inherent authority to modify the class definition any time before a final judgment. Progressive offers no reason why this Court should not modify the class definition as requested. Instead, it rehashes its failed argument, which it already raised unsuccessfully in its opposition to class certification.

Progressive's rehashed arguments should be ignored, and Plaintiff's Motion should be granted.

# REPLY

**A. Progressive offers no reason why Plaintiff's Motion to Modify the Class definition should not be granted.**

    **1. This Court has the inherent authority to modify the class definition to correct a clear error or prevent manifest injustice.**

As discussed in Plaintiff's opening Motion, Plaintiff Schroeder's Motion for Class Certification regrettably caused confusion by not making the proposed Class Definition in Exhibit 13 to the Motion readily apparent to the Court. Plaintiff believes this caused the Court to inadvertently certify the class definition that was preliminarily pled in the pleadings, and not the Class Definition that Plaintiff intended to and moved to certify, and that the Parties briefed, which is a Class of Progressive insureds "who made a first-party claim" with Progressive, regardless of whether they owe their total loss payments to a lienholder or other third party. Motion at 2-3.

Plaintiff believes the Court intended to certify the Class Definition that Plaintiff requested and not the preliminarily pled class definition because the Court did not indicate that it accepted any of Progressive's arguments when it found that the Rule 23 element of predominance was satisfied. As such, it would be appropriate to modify the class definition to the definition that Plaintiff and the Court intended to certify.

Progressive's Opposition offers no reason to deny Plaintiff's request. Rather, it simply rehashes arguments already considered and rejected by three other courts. *See Brown v. Progressive Mountain Ins. Co.*, No. 3:21-CV-175-TCB, 2024 WL 399479, at *5 (N.D. Ga. Feb. 1, 2024); *Drummond v. Progressive Specialty Ins. Co.*, No. CV 21-4479, 2023 WL 5181596, at *11 (E.D. Pa. Aug. 11, 2023); *Costello v. Mountain Laurel Assurance Co.*, No. 2:22-CV-35, 2024 WL 239849, at *13 (E.D. Tenn. Jan. 22, 2024)(report and recommendation); *see also Curran v.*

*Progressive Direct Ins. Co.*, No. 22-CV-00878-NYW-MEH, 2023 WL 8715699 (D. Colo. Dec. 18, 2023) (certifying modified definition sought here).

Indeed, Progressive concedes that this Court has discretion in deciding whether to modify a class definition under Fed. R. Civ. P. 23(c)(1). Opposition to Plaintiff's Motion to Modify Class Definition and Approve Class Notice, ECF No. 133 ("Opposition" or "Opp."), at 2-3. Progressive falsely asserts, however, that the Court's discretion is limited to situations where "subsequent developments" follow a class certification order. *Id.*[1]

Instead, as recognized by the *Volino* case Progressive heavily relies on, "[m]odifications pursuant to Rule 23(c)(1) ordinarily are made only upon a showing of "the need to correct a clear error or prevent manifest injustice." *Volino v. Progressive Casualty Insurance Co.*, No., 1:21-cv-06243-LGS, Dkt. No. 226 (S.D.N.Y.), at 1 (emphasis added).

The *Volino* court denied a motion to modify the class definition because it considered the motion as one for reconsideration and deemed it untimely—an argument Progressive does not press here. Moreover, in *Volino*, unlike here, the plaintiffs moved to certify a similar class of Progressive insureds who "received compensation" from Progressive, which plaintiffs understood

---

[1] The cases Progressive cites to support its fabricated legal standard are plainly distinguishable. Two are obvious *dicta* where courts are merely explaining the tentative nature of a class certification order; they do not purport to create a legal standard to satisfy in order to modify such orders. *See In re Synthroid Mktg. Litig.*, 188 F.R.D. 295, 298 (N.D. Ill. 1999) (dicta in a motion for class certification); *Rogers v. Baxter Int'l Inc.*, No. 04 C 6476, 2006 WL 794734, at *13 (N.D. Ill. Mar. 22, 2006) ("If subsequent developments so warrant, the court may alter or amend its order as necessary pursuant to Fed.R.Civ.P. 23(c)(1)(C)."). *In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130, 133 (S.D.N.Y. 2009), analyzed a motion to amend, but the court did not purport to set "subsequent developments" as the sole the standard either, as it suggested there are other reasons to support modification. *See id.* ("This standard echoes the law of the case doctrine, which advises a court to exercise caution in revising its earlier decision absent special circumstances. While not binding, the law of the case doctrine 'counsels a court against revising its prior rulings in subsequent stages of the same case **absent compelling reasons** such as an intervening change of controlling law, the availability of new evidence, or **the need to correct a clear error or prevent manifest injustice**.'") (emphasis added).

to mean any insured who received a claim benefit, regardless whether the benefit compensated them in the form of money directly in their pocket or in paying down on outstanding loan. During the parties' meet-and-confer about notice procedures, Progressive contested that insureds whose claim benefits were not paid directly to them where members of the class. To make clear that such individuals were meant to be included in the class definition, plaintiffs moved to modify that Class definition to make clear that insureds who had made a claim, irrespective of whether they ultimately owed their total loss payment to a third party and, thus, "received compensation" as Progressive misinterprets that term. *Id.*, ECF No. 24.

Although Plaintiff firmly believes—as the courts in *Costello* and *Drummond* found—that the "receive compensation" language includes all insureds with a covered claim, regardless whether they will pocket the money or must use it to satisfy some downstream obligation,[2] out of an abundance of caution Plaintiff asks the Court to modify the Class definition to take this semantic distraction off the table. Plaintiff therefore respectfully requests the Court enter her modified class definition, which was the same definition approved in *Brown* and *Curran*. *Brown v. Progressive Mountain Ins. Co.*, No. 3:21-CV-175-TCB, 2023 WL 7219499 (N.D. Ga. Aug. 3, 2023); *Curran*, 2023 WL 8715699, at *2.

### 2. This Court should reject Progressive's attempt to relitigate arguments the have been rejected by numerous federal courts.

As discussed in Plaintiff's Motion, at least three courts have rejected Progressive's theory that an insured lacks Article III standing if their total loss payment was owed to a third-party, such

---

[2] This was certainly Plaintiffs' intention. Plaintiffs never anticipated (until the dispute arose in the *Volino* action) that Progressive would misconstrue that language to exclude insureds who received compensation in a form other than cash into their pocket, as it quite common in the car insurance context for the compensation to come in the form of paying off a car loan or similar obligation to a third party. The specifics of how the benefits are received do not change Progressive's contractual obligation to pay ACV or the dollar amount of the injury when Progressive fails to fulfill that obligation.

as a lienholder. At its core, Progressive argues that it is entitled to undervalue claims and keep the difference anytime one of its insureds owes a portion of its policy benefits to a third party. Indeed, under Progressive's skewed view of the law it could go one step further – instead of simply undervaluing claims, it could simply deny claims outright anytime a claimant has downstream obligations to lienholders, rental or leasing companies and the like. That is absurd – the claimant is the owner of her claim. The Supreme Court had no difficulty rejecting this obviously flawed argument: "Even if there were encumbrances on the home worth more than the surplus, Tyler still plausibly alleges financial harm: The County has kept [money] that belongs to her." *Tyler v. Hennepin County*, 598 U.S. 631, 637 (2023). Progressive's arguments that insureds whose covered claims were undervalued have no injury lack merit.

Progressive has no response to the fact that at least three courts have rejected its Article III standing theory, and that the only specious support that Progressive relies on is not even dicta, as the court performed no analysis of the issue because it interpreted the class definition as excluding individuals whose claim benefits went to a lienholder. *See Volino v. Progressive Cas. Ins. Co.*, No. 21 CIV. 6243 (LGS), 2023 WL 2532836, at *10 (S.D.N.Y. Mar. 16, 2023) ("According to Progressive, when an insured had outstanding debt on their vehicles and gap insurance, the entire settlement paid by Progressive went to the 'lienholder,' not an insured class member[,]" but not ruling on that argument because "the classes are defined to include only insureds who 'received compensation for the total loss of a covered vehicle.'").

So instead, Progressive's Opposition attempts to distract this Court with meritless criticism of the *Costello* court's conclusion. But that does not change the fact that other courts have also rejected Progressive's standing arguments. Moreover, Progressive's criticism of *Costello* is not well taken.

The *Costello* court relied on *Drummond*, *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018), and similar holdings by "[t]he Fifth, Ninth, and Eleventh Circuits," to support its holding that Progressive insured who owed their total loss payment to a third party "suffered a concrete injury because they were denied the benefit of their bargain with Defendant through being deprived of ACV for their totaled vehicles." *Costello*, 2024 WL 239849, at 14. Progressive asserts that *Costello* "got it wrong" by relying on *Springer* because the Sixth Circuit's more recent holding in *Glennborough Homeowners Ass'n v. United States Postal Serv.*, 21 F.4th 410 (6th Cir. 2021), relying on *Thole v. U. S. Bank N.A.*, 140 S. Ct. 1615 (2020), "reversed course, holding" that a consumer who sues to vindicate "contractual rights" but suffered no monetary loss, lacks article III standing. Opp. at 6. The extent to which Progressive has misrepresented *Glennborough* and *Thole* is concerning.

First off, *Glennborough* (which *Costello* cited) **explicitly did not make any such holding**, instead, stating "[w]e need not resolve these thorny questions today." *Glennborough*, 21 F.4th at 416. Second, neither *Glennborough* nor *Thole* analyzed standing with respect to vindication of "contractual rights" as Progressive asserts. Instead, both courts clearly analyzed standing for "a plaintiff who sues to vindicate **statutory** rights." *Id.* ("[W]e note that a breach of a contract between two private parties, standing alone, may suffice as an injury for purposes of constitutional standing.") (emphasis added); *Thole*, 140 S. Ct. at 1619 (discussing whether plaintiffs would "have Article III standing to sue and a cause of action under ERISA § 502(a)(1)(B) to recover the benefits due to them.").

Progressive then concludes by baldly asserting that "*Thole*" is "on point." But Progressive offers absolutely zero analysis of *Thole* or why Progressive believes it is "on point." Nor could it, as the *Brown* court found *Thole* distinguishable when finding the argument Progressive makes here

7

"flies in the face of clear law[.]" <u>Brown v. Progressive Mountain Ins. Co.</u>, No. 3:21-CV-175-TCB, 2024 WL 399479, at *5 (N.D. Ga. Feb. 1, 2024) (internal citation and quotation marks omitted).

This Court should not be distracted by Progressives misrepresentations. Progressive's rehashed objections to the modified class definition have no merit, which is why they have been easily rejected by three courts, and is why Progressive relies on nothing but misrepresentations and *dicta* to support its position. Progressive's rehashed arguments are improper and should be rejected.

**B.      The Court should approve the proposed Class Notice Plan.**

Progressive largely agrees with Plaintiff's proposed Class Notice Plan but asserts the Notice Plan must include a procedure to identify Class members who "received compensation" under the current class definition, and that Plaintiff's proposed Class Notice forms should indicate that Class members must have "received compensation." Opp. at 7-8. If Plaintiff's Motion to modify the class definition is granted, that will moot Progressive's main argument.

Otherwise, Plaintiff agrees to identify only Progressive Paloverde Insurance Company as the "Defendant" and agree to Progressive's other non-substantive edits to the Class Notice forms, and it appears that the parties are in agreement on the substance and timing of the Class Notice Plan, and it should therefore be approved by the Court.

Dated: March 18, 2024

                                                    Respectfully submitted,

                                                    <u>/s/ Chris Gold</u>
                                                    Chris Gold (admitted *pro hac vice*)
                                                    EDELSBERG LAW, P.A.
                                                    20900 NE 30th Ave, Suite 417
                                                    Aventura, FL 33180
                                                    Telephone: (305) 975-3320
                                                    scott@edelsberglaw.com
                                                    chris@edelsberglaw.com

Jacob L. Phillips (admitted *pro hac vice*)
NORMAND PLLC
3165 McCrory Place, Suite 175
Orlando, FL 32803
Telephone: (407) 603-6031
jacob.phillips@normandpllc.com

Hank Bates (admitted *pro hac vice*)
Lee Lowther (admitted *pro hac vice*)
CARNEY BATES & PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR 72201
Telephone: 501-312-8500
hbates@cbplaw.com
llowther@cbplaw.com

Andrew J. Shamis (admitted *pro hac vice*)
Edwin E. Elliott (admitted *pro hac vice*)
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: (305) 479-2299
ashamis@shamisgentile.com
edwine@shamisgentile.com

## **CERTIFICATE OF SERVICE**

I certify that on March 18, 2024, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system, which will automatically send notice of such filing to all counsel of record.

*/s/ Chris Gold*
Chris Gold